## Riley Ross *et al.*

### *v.*

### Alexander Demoss.

1. ATTORNEYS—*propriety of testifying for clients.* It is of doubtful professional propriety for an attorney to become a witness for his client, without first entirely withdrawing from any further connection with the case.

2. An attorney occupying the attitude of both witness and attorney for his client, subjects his testimony to criticism, if not suspicion.

3. While the legal profession is an honorable one, its members should not forget, that even they may so act as to lose public confidence and general respect.

4. MORTGAGE — *when extinguished.* It is a familiar maxim in equity, that once a mortgage always a mortgage, until foreclosed or barred in some other mode.

5. SAME — *presumption of purchase by mortgagee.* Where a mortgagee sells under a power of sale contained in the mortgage, and his son becomes the purchaser, and soon after reconveys to the mortgagee, and no purchase money is shown to have passed on either occasion, the inference would not be a strained or unreasonable one, that it was in fact a purchase by the mortgagee.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. CHARLES R. STARR, Judge, presiding.

The facts are sufficiently stated in the opinion.

Mr. CHARLES J. BEATTIE, and Messrs. DICKEY & RICE, for the plaintiffs in error.

Messrs. FLEMING & PILLSBURY, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a suit in equity, brought by Alexander Demoss, in the Livingston Circuit Court, against Riley Ross, Margaret Wood, Daniel J. Wood, and Benjamin W. Gray, to have a mortgage satisfied, and the lands reconveyed to complainant. It appears that defendant in error, in April, 1858, executed a mortgage with a power of sale, to secure to William Ross $68, on forty acres of land. That subsequently, in September of the same year, to secure the further sum of $300, defendant in error executed a mortgage on another tract of land, containing seventy-five acres, to William Ross, with power of sale.

That in the month of October, 1859, Ross advertised and sold the land, and Riley Ross, his son, became the purchaser; that in the following January, Riley Ross reconveyed the lands to his father, for the expressed consideration of $365, and a few cents; that William Ross died in the month of September, 1860, intestate, leaving Riley Ross and Margaret Wood, who was the wife of Daniel J. Wood, his heirs; and that Gray subsequently became the administrator of his estate.

It is alleged in the bill, that the sale by Ross was not intended to be a foreclosure of these mortgages, but that it was at the time agreed that defendant in error should have further time to pay and redeem the lands ; and that all of the money for which the mortgages were given had been fully paid.

On the trial below, the evidence was conflicting, but it seems to preponderate in favor of the decree. The weight of the evidence of Garner is somewhat impaired from the fact, that he was proved to have been one of the attorneys in the case, and had a conditional fee, dependent on the result of the suit. It is of doubtful professional propriety for an attorney to become a witness for his client, without first entirely withdrawing from any further connection with the case; and an attorney occupying the attitude of both witness and attorney for his client, subjects his testimony to criticism if not suspicion, but where the half of a valuable farm depends upon his evidence, he places himself in an unprofessional position, and must not be surprised if his evidence is impaired. While the profession is an honorable one, its members should not forget, that even they may so act, as to lose public confidence and general respect. Although the evidence of this witness may be impaired, still other witnesses whose motives do not seem to operate against their credibility, strongly support and corroborate his testimony.

It seems that Ross, in his life-time, and shortly before his death, stated repeatedly, and to different persons, that there were but thirty or thirty-five dollars due on the debts for which the land was mortgaged. It appears that he stated to Asa Demoss, that there were thirty-four dollars behind. This seems to have been perhaps two or three months before his death, and after the sale. He said he was glad that Demoss was so near out, and it was not the understanding that he was to keep the place, and he did not want it. Rollings swears, that four or five days before Ross' death, he said to witness, he was going to do what was right with Demoss; that he said there were but thirty-five dollars due; that he had received from Demoss two colts and a cow ; that he understood from Ross, that there

450 Ross *et al. v.* Demoss. [Sept. T.,

Opinion of the Court.

were but thirty or thirty-five dollars due on the mortgage. Yomans testified, that in the summer before Ross' death, he said to witness that he was to get the rent that fall, and it would pay, and perhaps more than pay, what was due him, and that the farm of defendant in error was referred to at the time, and that Ross' reply was to a question asked by witness, whether defendant in error was about to redeem his property. Garner swears that Ross and Demoss came to him to get a deed prepared, conveying the premises; that Ross stated that he had received of Demoss two colts and a cow, and there were but thirty or thirty-five dollars due on the debt; that he prepared a deed, but when he found Ross soon after, he was not in a condition to execute the deed; and it appears that all of these declarations and admissions were made by Ross after the sale of the premises, and they had been conveyed to him.

The evidence shows, that, when the deed was presented to Ross to execute, he refused, saying to Garner that he had kept him drunk for three weeks to get him to execute it, but he did not intend to do it; that he intended the place for his son. Lucy Robinson testified that Ross had been beastly drunk for two weeks before his death. Mrs. Mary Haner testified, that defendant in error came to Ross' house just before he died, and wanted to know where he should put the rent corn. John Wood, a brother of Daniel J. Wood, swears that he heard a conversation between Ross and defendant in error in the summer of 1860, during harvest, in which Ross claimed, that he had proceeded according to law in selling the property; that he said to defendant in error that he had time enough to pay up the debt but had failed. Gorbet testified, that he heard defendant in error conversing with Ross, and wanted more time to pay a mortgage on his land, and Ross replied he needed money and did not see how he could extend the time for payment. That after Ross died he heard defendant in error say he owed Ross about three hundred dollars, and it might lead to trouble.

William Wood testifies that he was present when Garner presented the deed for Ross to execute, and he refused, saying

he would not until the money was paid; that only about thirty dollars had been paid, and from three to four hundred dollars was still due. That this was just before Ross' death. That defendant in error said to him after Ross' death that he owed him $300, and had not got the matter arranged. Funk testifies that he went with Ross, to see defendant in error to buy some colts, but he regarded the price too high and refused to take them.

In so much conflict in testimony, it is hard to determine with absolute certainty as to what is proved. But, upon a careful examination of all that is in the record, we are strongly impressed with the belief that the weight is decidedly in favor of the continuance of the mortgage and its ultimate payment by defendant in error. It is a familiar maxim in equity, that once a mortgage always a mortgage until foreclosed, or barred in some other mode. And, when we find a mortgagee selling under a power, and his son becoming the purchaser at the sale and soon after conveying to the mortgagee, and no purchase money shown to have passed on either occasion, the inference would not be a strained or unreasonable one, that it was in fact a purchase by the mortgagee. And if so, he could not make a binding purchase at his own sale. Here seems to have been a property sold, worth at the time from two to three thousand dollars or more, for but little if any more than three hundred and fifty dollars; and that, too, to his son, who, within two months and about a half, reconveys to his father.

If Ross, through his son, purchased the land when he offered it under the mortgage, the sale was inoperative, and did not change the relations of the parties. We think it may be safely inferred that such was the fact from the course that was adopted. And we think that Ross so regarded it, or why afterward receive the two colts and the cow on this debt. Yomans states, he admitted to him that he had received them on the debt. From this no other inference can be drawn than Ross regarded and treated it as a mortgage even after the sale, and received a payment on the claim, and it is but equitable, to carry out his understanding of the matter by permitting Demoss to redeem.

452      Ross *et al. v.* Demoss.      [Sept. T.,

Opinion of the Court.

By receiving payments on the debt after the sale, Ross gave character to the transaction and stamped it a mortgage, and equity will so treat and enforce it.

Under such circumstances we may well suppose the mortgagee would not have the conscience to claim the land in fee, but that he would use his changed position to hasten the payment of the mortgage debt. Hence his repeated admissions of its still being a mortgage, and his treating the rents as a payment on the debt. All seem to concur, the witnesses of plaintiffs in error as well as the others, that Ross, up to within a few days of his death, claimed that defendant in error was owing him. And there is no evidence in this record that any other indebtedness ever existed between them but this mortgage debt.

It appears that he went to purchase the colts, and although he did not buy them at that time, still he subsequently said he had bought them. The fact that he had previously proposed to purchase the colts renders his declaration that he had, reasonable, and it is highly probable it was true. And the fact that defendant in error went to Ross to learn where he should deliver the rent corn does not conflict with, but is entirely consistent with, the testimony of Yomans, who says Ross stated he had received the colts and a cow, and that the rent of the ensuing fall would pay the debt. It is true, the testimony of witnesses, that defendant in error admitted after Ross' death that he was owing $300 on the mortgage, is wholly irreconcilable with the evidence of witnesses that Ross admitted that all but $30 or $35 had been paid. In such a conflict the only course is to reject such portion as seems to be unworthy of belief. The circuit judge has better means of determining which class of witnesses are the most worthy of credit, than we possess. In this case he has given credit to the testimony of the witnesses of defendant in error, and we are unable to see that he erred in that conclusion.

The decree of the court below must be affirmed.

*Decree affirmed.*