# CURTIS v. MOORE et al., Appellants.

## Division One, May 14, 1901.

1. **Deed of Trust: PAYMENT: SALE: INNOCENT PURCHASER.** If the debt secured by a deed of trust is fully paid before foreclosure, the trustee's deed conveys no title, for the power to sell is extinguished as between the mortgagor and the mortgagee. But as to the purchaser at the trustee's sale, in good faith and without notice, his deed passes a good title. And if the debt has not been paid, as was the fact in this case, of course, the trustee's deed passes the title to the purchaser.

2. ————: **RESULTING TRUST: SUIT TO SET ASIDE SALE: PROCEEDS OF SALE.** In a suit to set aside a trustee's deed under foreclosure sale, on the ground that the debt had been paid prior to the sale, it is necessary for the plaintiff, in order to establish a resulting trust in the land, to show that it was her money that paid for the land, in spite of the fact that it was, at the time of the purchase, deeded to her husband.

3. ————: **FORECLOSURE: ESTOPPEL.** Where the mortgagor at the time of the trustee's sale knew every fact concerning the payment of the debt which he revealed at the trial, he can not excuse his action in requesting the sale to be made, in directing how it should be made, in accepting the proceeds of the sale and in afterwards renting the land from the purchaser and paying rent therefor, by claiming he was then ignorant of such facts. But knowing them and having failed to take timely steps to prevent foreclosure, he is estopped from calling the sale in question.

4. ————: **RESULTING TRUST: PROCEEDS OF SALE.** The proceeds of the sale of land, made after the mortgagor's death, should not be turned over to his widow unless she establishes a resulting trust in the land, that is, shows that it was her separate money that bought it, although it was deeded to her husband, the mortgagor, but such proceeds belong to his administrator.

Curtis v. Moore.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*A. M. Hough* for appellants.

(1) The judgment is not supported by the evidence. The testimony of plaintiff and her witnesses is too loose and uncertain to justify the judgment of the court. There is no testimony from which the court can arrive at a conclusion that the notes had been paid, at the time of the sale. No credits are shown except those on the notes, and the statement of plaintiff that she had made payments, without giving any dates or amounts, is not sufficient to overcome the indorsements on the notes. (2) Defendants Moore and Williams are not necessary parties to this suit, and the judgment against them for costs is wholly unwarranted by the testimony or any allegation of the petition. Plaintiff does not ask judgment against them.

*H. C. O'Bryan* for respondent.

(1) Moore and Williams and Marshall are necessary parties. Moore has an interest to defend; Williams an interest in whether his deed of trust, his security, shall be cancelled; and Marshall an interest whether the sale shall stand. We have made the heirs' parties because part are minors, had no guardian, and could not join; others did not join; they can be made defendants and their rights can be protected. (2) In the event there was anything due and the sale should stand, then the widow had the right to be reimbursed for her separate property invested in the lands, whether in paying on purchase price or invested in improving the lands and paying taxes;

therefore, they were made parties, and therefore, the testimony on that line to give the court information, so as to distribute surplus of money if sale should stand. (3) She is not estopped by not having objected to sale. She gave credit to Moore's statement that the note was unpaid. Moore gave her $50. It was Marshall's money. The court requires her to pay it back and deduct it from money that Marshall collected from her as rent. Marshall rented her the land; she could not defend against payment of rent under statute. She paid according to contract and under protest that she would sue and recover the amount back. The minor children are joint owners; they are not estopped. No fraud has been committed by her or them and no act of theirs operates to defraud or deceive. Whatever wrong has been committed was not by respondent or her children, but by the appellants, who complain of the circuit court decree.

MARSHALL, J.—This is a bill in equity to declare a resulting trust, for an accounting, and to set aside a trustee's deed to eighty acres of land in Scott county, Missouri, being the south half of the northwest quarter, of section twenty-four, township twenty-seven, to divest the title out of the purchaser at the sale under the deed of trust and vest it in the plaintiff, if the accounting shows that the debt secured by the deed of trust was paid before the deed of trust was foreclosed, and if not so paid, to require the trustee to turn over to the plaintiff the surplus of the amount received by him at the foreclosure sale, remaining in his hands after the debt was satisfied. There was a decree in the circuit court for the plaintiff, setting aside the trustee's deed and vesting the title in the plaintiff, from which the defendants prosecuted this appeal.

The record discloses the facts to be: that on the fourth of October, 1883, defendant H. H. M. Williams and wife

conveyed the land by warranty deed to Melkier C. Ware, for an expressed consideration of $320. On the seventeenth of October, 1883, said Ware executed and delivered to defendant Joseph H. Moore, as trustee for defendant H. H. M. Williams, a deed of trust on the land to secure a debt of $320, evidenced by Ware's three notes for $106.50 each, payable at one, two and three years, respectively, with ten per cent interest from date, to be compounded annually if not paid. Ware died on the twenty-ninth of December, 1887. Prior to his death Ware paid Williams an amount, which the plaintiff contends was nearly sufficient to extinguish the whole debt, and after his death the plaintiff, his widow, paid Williams a further amount, which she claims was more than enough to pay the interest and the balance of the debt, the excess being paid by her by mistake and in ignorance of the alleged subsequently-discovered fact that the debt had been fully discharged. The defendants deny that the payments by Ware and by the plaintiff were sufficient to liquidate the debt, and on the contrary contend that on the twenty-eighth of December, 1896, the two notes, payable at one and two years, had been paid, but that there was still due on the last note, payable at three years, a balance of $163.65, and that at the plaintiff's request the deed of trust was foreclosed on that day, and defendant Marshall, became the purchaser of the land at the price of five hundred dollars, of which $163.65 was applied to the payment of the last note, $17 to expenses, and of the surplus, $50 was turned over to the plaintiff, and the balance, $269.35, was still in the hands of the trustee, which he offered to pay to whomsoever the court adjudged was entitled to it.

The plaintiff claims that the money paid by her husband was her separate property, and that the payments she made after his death were made out of her own funds, and hence, she seeks to establish a resulting trust in her favor in the land.

The notes themselves were offered in evidence and the first one bears an indorsement: "Paid on this note $141.74 out of the $192 received on the Simpson note, May 1, 1889." This concededly extinguished this note. The second note is indorsed: "Received $120.70 on March 3, 1889; balance due, $58.60"; "Received on this note $50.26, balance received on the Simpson note of $192 not credited on the former note," no date; and, further, "Paid balance on this note," no date given. It is also conceded that this note was fully paid. The third note shows these indorsements: "Paid on this note ten dollars and sixty-five cents, Aug. 10, 1890 (as Aug. 17-90) J. H. Moore; Paid on this note ten and 65-100, $10.65, Aug. 24-90 (as Aug. 17-91); Paid on this note Thirty and 60-100 dollars, Aug. 31-92, $30.60 (as Aug. 17-92). Bal. 190.18; Paid on this Sept. 18-93 eight and 55-100 dollars, $8.55 (as Aug. 17-93), bal. 200.65; Recd. May 4-94 per. Jas. H. Moore fifty-four and 55-100 dollars, $54.55, bal. 161.05; Received Aug. 27-94 eighteen dollars $18.00, on within note, bal. 148.10; Received Feb. 27-96 twenty dollars, ($20.00) Bal. 151.05; Dec. 28-96.    Paid in full by sale of land $163.65, J. H. Moore, Trustee."

All of these indorsements were in the handwriting of defendant, Moore, the trustee, or of defendant, Williams, the *cestui que trust*. In addition to these payments the plaintiff showed that she paid defendant Williams, through James F. Evans, $18 on the thirty-first of August, 1894, and $35 on the sixth of May, 1894.

Thus it appears that the notes at one and two years were fully paid. The defendants contend that Ware paid nothing on the three-year note during his life; that the plaintiff made the first payment of $10.65 on the tenth of August, 1890, and that the aggregate payments she made from that time to December 28, 1896, when the property was sold, were $153; that

compounding the interest annually, and deducting the several payments so made by her, left a balance due on the note on December 28, 1896, of $163.65 and hence, the debt was not paid, and, therefore, the foreclosure of the deed of trust was legal and proper.

To overcome this, however, the plaintiff shows that she paid the $18 and the $35 aforesaid, which she is not credited with by the defendant, and also claims that the proceeds of the Simpson note were $300, to which she added $20, and that her husband paid Williams the $320, which extinguished the whole debt, except, perhaps, some forty dollars which she afterwards paid, and, therefore, the whole debt was paid before the foreclosure of the deed of trust, and hence, the sale was void.

It will be observed that the plaintiff contends that her husband paid Williams $320 the proceeds of the Simpson note with the twenty dollars added, whereas, Williams gave credit for only $192, and this is the principal dispute between the parties in this case, outside of the $18 and $35 paid by plaintiff through Evans to Williams.

The Simpson note, which plays so important a part in this case, was a note for three hundred dollars, made by J. R. Simpson to M. C. Ware, plaintiff's husband, in payment for land owned by M. C. Ware, and sold by him to Simpson. The date of the note is not disclosed by the record. On the eighth of August, 1887, Ware sold the note to Ben Hunter for its face value, three hundred dollars. The plaintiff claims to have added twenty dollars to this sum, thereby aggregating the face of the three notes given by Ware to Williams on the seventeenth of October, 1883, and that Ware paid this $320 to Williams about the ninth of August, 1887. In this way (together with the amount paid by plaintiff after Ware's death) it is asserted that the debt secured by the deed of trust was more than fully paid before the foreclosure, and, hence,

the debt being paid the deed of trust was *functus officio,* and the sale void.

As stated, after the sale, the plaintiff accepted fifty dollars of the surplus remaining after the application of the proceeds of sale to the notes and expenses, and thereafter rented the premises from the purchaser for a year, and paid therefor one hundred and forty dollars rent. But she claims that this was done in ignorance of the fact that the debt had been paid before the foreclosure, and therefore she is not estopped by that conduct on her part. The trial court took this view, and in addition to declaring a resulting trust in her favor, without stating any account, cancelled the trustee's deed, vested the title in her, ordered that the fifty dollars she had so received from the trustee be deducted from the one hundred and forty dollars rent she had paid the purchaser at the trustee's sale, and gave her a judgment against the said purchaser for the difference, ninety dollars. From this decree the defendants perfected this appeal.

## I.

If the debt secured by the deed of trust was fully paid before the foreclosure, the trustee's deed conveyed no title, for the power to sell was extinguished as between the mortgagor and mortgagee. But as to the purchaser at the trustee's sale, in good faith and without notice, the deed passed a good title. [Smith's Ex'r v. Boyd, 162 Mo. 146.]

In this case the facts proved fall short of establishing a payment of the debt before the foreclosure. There is no evidence that Ware paid Williams or his agent Moore three hundred and twenty dollars on the ninth of August, 1887, or at any other time. The plaintiff's evidence tends to prove that Ware transferred the Simpson note to Hunter on August 8,

1887, for the face value, three hundred dollars, and that Ware and his wife, the plaintiff, added twenty dollars thereto, and that on the next day Ware went to Benton to pay the money to Moore. No one testifies that Ware did pay Moore. But it is shown that afterwards Ware did not have any money, and that a few days later when he wanted to buy some mules he had no money and had to trade cattle for the mules. In this way alone the plaintiff attempted to show that Ware paid the $320 to Moore. It may be that Ware, being dead, the plaintiff could not prove the fact of such payment in any other or better manner, but the facts shown do not afford substantial basis upon which to predicate a decree of such payment.

But, assuming that Ware did pay the $320 to Moore on or about August 9, 1887; this, with the payments made by plaintiff after Ware's death, would not be sufficient to extinguish the debt. The three notes secured by the deed of trust aggregated $320, were dated October 17, 1883, and drew ten per cent interest from date, to be compounded annually, if not paid. On August 9, 1887, the principal and interest, so computed, therefore, amounted to $459.97. So that if Ware paid Moore $320 on that date there would still be $139.97 due on the debt, and this being so, the deed of trust would still be valid. That the debt was not extinguished by Ware's payment to Moore, is further clearly shown by the fact, testified to by the plaintiff, that when he came home he only brought back the first note. If the debt was fully paid he would have brought back all three. After Ware's death the plaintiff paid $153. But even this added to what Ware paid (assuming it was $320) would not extinguish the debt. Taking the balance due on the debt on August 9, 1887, after the payment by Ware of even $320, to be $139.97, and calculating the interest at ten per cent, compounded, and deducting the partial pay-

ments, aggregating $153, made by plaintiff, it would leave a balance of $163.24 due on the debt, on the twenty-eighth of December, 1896, the day on which the deed of trust was foreclosed. And if from this we deduct the disputed payments of $18 and $35 made by plaintiff through Evans, there would still be $110.24 due on the debt and interest. This being true the deed of trust was not *functus officio,* and the sale thereunder was not void, but on the contrary passed a good title. The plaintiff manifestly omits to include the interest in calculating, else it could not be claimed that the debt was paid before the sale.

The conclusion is irresistible that there is not sufficient evidence disclosed by this record to support the finding of the trial court that the debt had been paid before the foreclosure, and for this reason the judgment of that court must be reversed.

## II.

The fundamental fact necessary to plaintiff's recovery is that she has a resulting trust in the land, arising from the fact that it was her separate money that paid for the land. The evidence preserved in this record does not support this contention. The land was conveyed by general warranty deed from Williams to Melkier C. Ware, on October 4, 1883, for an expressed consideration of $320. This deed was recorded on the tenth of September, 1884. The deed of trust in question here was executed by M. C. Ware alone, on October 17, 1883, to secure three notes, aggregating $320, made by Ware alone, and was recorded October 24, 1883. The amount of the deed of trust corresponds exactly with the price paid for the land, but this is the only circumstance which suggests that the debt secured by the deed of trust was the purchase price for the land.

But assume that this was the fact, and assume that the

three hundred dollars received by Ware from Hunter for the sale of the Simpson note was applied to the payment of the deed of trust, there is yet no evidence that the Simpson note was the separate property of the plaintiff.    The only evidence as to this is the testimony of Simpson and of the plaintiff.  Simpson testified as follows:

"Q.    State if at any time you ever owed Mrs. Curtis a note; if so, how much ?    A.    For three hundred dollars.

"Q.    You made the note.    She was the party to whom ? A.    I made it to her husband, M. C. Ware.

"Q.    Was it for a debt due her, or due Ware ?    A.    It was due her for land I bought from him while living.

"Q.    Whose land was it ?    A.    Ki Ware's.

"Q.    Who is Ki—Malachi or M. C. Ware ?    A.    Yes, sir.

"Q.    The note was for three hundred dollars ?    A.    Yes, sir.

"Q.    Do you know what Ware did with that note ?    A. He told me—

"Objected to—

"Q.    Who did you get the note from—who did you pay it to ?    A.    Mr. Ben Hunter.

"Q.    Did you see the indorsements on the note when it was assigned by Ware to Hunter ?    A.    Yes, sir; it was assigned to Hunter.

"Q.    Did you see the indorsements ?    A.    Yes, sir; across the back.    He owned the note and sold it to Hunter.

"Q.    It was paid off to Hunter ?    A.    Yes, sir.

"Q.    Do you remember what time Ware assigned it to Hunter ?    A.    He sold the note to Hunter, August 8, 1887.

"Q.    August 8, 1887 ?    A.    Yes, sir."

Plaintiff testified on this subject as follows:

"Q..    Do you know how much the Simpson note was for ?

A. I think it was three hundred and twenty—or just three hundred.

"Q. How long had the note been running on interest at the time your husband assigned it to Ben Hunter? A. I think two or three years. We sold the land, Mr. Ware and I. Simpson, he gave a note to draw interest.

"Q. It was a land note—the Simpson note? A. Yes, sir; for our home land. We bought the land from Mr. Moore.

"Q. It was a land note? A. Yes, sir.

"Q. Did you see the amount of money your husband brought home from Hunter? A. I think it was three hundred dollars, even.

"Q. Do you remember about what time he brought that money home? A. No, sir, I don't.

"Q. How long did he have it at home before he started to hunt Williams and Moore? A. He came one evening from Sikeston from Hunter's; and he came the next morning to Benton to pay Mr. Moore on the land, and brought three hundred and twenty dollars—the whole three hundred, and the twenty we got other ways."

Thus it will be seen that Simpson testifies that the land he bought was Ware's land and the note he gave for the purchase price was payable to Ware, and the plaintiff says, "We sold the land, Mr. Ware and I; Simpson, he gave a note to draw interest. Q. It was a land note—the Simpson note? A. Yes, sir; for our home land. We bought the land from Mr. Moore."

This wholly fails to establish the fact necessary to plaintiff's right to recover, that the land sold to Simpson was her separate property or that the Simpson note belonged to her and not to her husband. And without this fact the plaintiff can not be said to have shown a resulting trust in her favor.

Making all reasonable and proper allowances for the con-

dition and inexperience of the plaintiff as explanatory of her testimony, it is clear that she has not made out a case of a resulting trust in the land, and the judgment of the trial court, so holding, is erroneous.

## III.

The deed of trust was foreclosed on the written request of the plaintiff to the trustee and *cestui que trust*. She was present at the sale and directed how it should be sold, and accepted fifty dollars of the surplus proceeds arising from the sale, after the payment of the balance due on the debt, and afterwards rented the land for a year from the purchaser, paying him $140 rent therefor. This is pleaded by the defendant as an estoppel *in pais* to her right to have the trustee's sale annulled. She seeks to avoid this by averring that it was done in ignorance of the fact that the debt secured by the deed of trust had been paid, and that she could not know this to be the fact because defendant Moore had her receipts and would not give her a statement of the account.

The testimony adduced wholly fails to show that the plaintiff was in ignorance of all the facts disclosed by this record as to the payments previously made by Ware and herself, when she asked that the deed of trust be foreclosed. She knew then all she has since learned or shown relating to the Simpson note, and to the payments she made after her husband's death. She admits she asked for the foreclosure because the *cestui que trust* and his agent were pressing her for the balance due and she could not pay. If the debt was fully paid at that time, as she now claims, but as pointed out has failed to prove, it was her duty to so state then and to take timely steps to prevent the foreclosure of the deed of trust. Instead of doing so she acquiesced in the sale, and took part of the proceeds, and it is now

too late for her to call that sale in question.    She was silent when she should have spoken, so that the law puts the seal of silence on her lips now.

## IV.

The record discloses that after the payment .of the debt there was a balance in the hands of the trustee of $319.35, of which fifty dollars was turned over to the plaintiff and $269.35 remains in the hands of the trustee, which he offers to turn over to whomsoever the court may direct.    The petition asks that if an accounting fails to show that the debt secured by the deed of trust was fully paid before the foreclosure, then she may have a decree for the balance in the hands of the trustee.

This is predicated upon the idea that she had a resulting trust in the land.    As she failed to establish such a trust, she likewise failed to show herself entitled to this surplus.

All the heirs of M. C. Ware are parties to this suit, as is also the trustee, who has this surplus in his hands.    It was competent and proper, therefore, for a court of equity to adjudge the whole controversy in this proceeding.    The $319.35 surplus in the hands of the trustee, of right belongs to the estate of M. C. Ware.    The trustee had no right, so far as this record discloses, to pay the fifty dollars to the plaintiff.    The whole $319.35 should have been paid to the administrator of M. C. Ware's estate, to be distributed by him, as assets of that estate, under the order of the probate court.

For these reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith.

All concur.