Charles E. SMITH and Zola F. Smith, his wife, Appellants,

v.

John HALEY and Henrietta Haley, his wife, Respondents,

Ellis S. Ruby and Anna M. Ruby, his wife, Defendants.

No. 46504.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

Roy Hamlin, Hannibal, William Turpin, Bowling Green, for appellants.

John Haley, Bowling Green, pro se, Ely & Hibbard, Ben Ely, Hannibal, for respondents.

BOHLING, Commissioner.

Charles E. Smith and Zola F. Smith, his wife, sued John Haley and Henrietta Haley, his wife, and Ellis S. Ruby and Anna M. Ruby, his wife to set aside a trustee's deed to Ellis S. Ruby by John Haley, trustee, following a foreclosure sale under a deed of trust securing plaintiffs' $1,650 note payable to defendants Ruby, and a deed by defendants Ruby conveying said land to defendants Haley. These deeds are dated February 13, 1954. The defendants' answer was in the nature of a general denial, with the defendants Ruby filing a

counterclaim for a deficiency judgment on plaintiffs' note. Plaintiffs' reply to the counterclaim was a general denial. The chancellor found that defendants Ruby were entitled to a deficiency judgment, with interest, against plaintiffs on plaintiffs' $1,650 note, less payments thereon ($910) and the proceeds of the foreclosure sale ($400); that plaintiffs were entitled to damages against defendants Ruby arising out of the fraudulent foreclosure sale ($1,250) and the destruction of the house on the land, hereinafter detailed ($1,725); and that defendants Haley were innocent purchasers for value. The chancellor denied plaintiffs' prayer to set aside the trustee's deed and deed from defendants Ruby to defendants Haley. This appeal is by the plaintiffs from the decree and judgment in favor of defendants Haley.

Defendants Ruby are the parents of plaintiff Zola F. Smith. The Rubys conveyed the land, approximately eighteen acres near Bowling Green, in Pike County, by warranty deed to the Smiths, as husband and wife, on September 12, 1951. The consideration was $1,650. Plaintiffs gave their note of said date for $1,650, payable, with four per cent interest, to the Rubys in monthly installments of $35, beginning October 1, 1951, and secured said note by their deed of trust on the land to John H. Haley, trustee. The deed and deed of trust were recorded September 25, 1951.

Mr. Haley is an attorney and Mrs. Haley assists him in his office. He drafted and Mrs. Haley typed the deed and deed of trust.

Plaintiffs moved onto the land in early 1952, and made improvements thereon for living purposes, as found by the trial court, of $1,725.

Plaintiffs had Mr. Ruby enter and initial payments on their note in a book, and these entries showed $35 payments each month beginning with October 1, 1951, and ending with April 1, 1953, a $5 payment May 1, 1953, and a $240 payment November 24, 1953, a total of $910. However, up to the foreclosure sale the credits endorsed on the $1,650 note covered only the $35 monthly payments from October 1, 1951, through April 1, 1952, and the $5 payment of May 1, 1953, a total of $250. Ruby at first testified that the credits endorsed on the note included all payments made by the plaintiffs, but, upon being shown the book kept by plaintiffs, admitted the credits shown therein were acknowledged by his writing his initials opposite each credit.

In November, 1953, Mr. Smith told Mr. Ruby the place was for sale. Smith testified Ruby stated he was selling his place and when paid he would buy the land from the Smiths for $1,650 in cash and forego the $740 balance due on the note. Ruby testified he agreed to buy the place for "a couple thousand dollars," he imagined. He stated there was then about $700 unpaid on plaintiffs' note.

Mr. Ruby intended to live on the land. He purchased $285 worth of lumber, placed a King heater stove in the house and started remodeling about the first of December, 1953. There was a "little fire" in the stove when the Rubys left the first evening. The house and Ruby's lumber were completely destroyed by fire that night.

The Smiths were living in Hannibal. Ruby went to the Smith home, told his daughter about the fire, and said it was his loss, "I am buying the place." He never paid the Smiths any money.

The only time plaintiffs thereafter saw Mr. Ruby prior to the trial was at Ruby's son's home just before Christmas, 1953. At that time Ruby told Smith he thought he would have the $1,650 before the first of the year. Ruby stated he had not talked to Mr. or Mrs. Smith after telling his daughter he assumed responsibility for burning the house; and that he did not remember any conversation with Smith at his, Ruby's, son's home, but he would not deny having had the conversation.

Plaintiffs consulted an attorney in Hannibal. The attorney wrote the Rubys, then living in Center, Missouri, on January 15, 25, and February 8, 1954, to the effect the Smiths wished to settle the matter amicably, were willing for the Rubys to deduct the balance due on the note from the loss caused by the fire (placed at $2,000), and desired to avoid unnecessary expense. The Rubys received each of these letters, but did not take the matter up with the Smiths or their attorney.

The first insertion of the avertisement of the foreclosure sale to be held by the trustee on February 13, 1954, appeared in the Bowling Green Times on January 21, 1954. No effort was made by the Rubys or by trustee Haley to advise the Smiths of the sale or to demand payment of the note. The Smiths had no actual knowledge or notice of the sale. Mr. Ruby, trustee Haley and Mrs. Ilah Bannister were the only persons present at the sale. There was only one bid for the land, $400 by Ruby. The sale was held open for ten or fifteen minutes and the land was struck off to Ruby. The trustee endorsed a credit of $350 on the note ($400 less expenses of sale of $50).

Mr. Ruby accompanied Mr. Haley to Haley's office immediately after the sale. Trustee Haley executed a trustee's deed conveying the land to "Ellis S. Ruby" for the bid price of $400; and Ellis S. Ruby and Anna M. Ruby, who was at Haley's office, executed a warranty deed conveying the land to "John H. Haley and Henrietta Haley, husband and wife," the proved consideration being $600 and the expenses of the sale. Haley gave Ruby a check for $200, and the Haleys executed a deed of trust against the land to the Rubys securing a note for $450. These deeds were recorded February 15, 1954.

Mr. Ruby was called to the stand by plaintiffs under the rules of cross-examination. He testified that immediately after the fire he was "in touch with" his attorney John Haley, and, on cross-examination,

that in the latter part of January, 1954, he had a talk with Haley. "Q. What did you tell him to do? A. I just told him to foreclose"; that he did not tell Haley "at that time about any agreement or contract or understanding" he had with the Smiths "about buying the place back or anything of that kind"; and:

"Q. Did you have any talk with him [Haley] about the burning of the place down at that time? A. Yes. I talked to him.

"Q. You told him it had burned down? A. Yes.

"Q. Did you tell him you had promised or told anybody that you were going to pay these damages for burning it down? A. No.

"Q. Did you or did you not at that time have any understanding with Mr. Haley that if you bought in the place at the foreclosure that you would turn around and sell it to him? A. No, sir."

He did not know whether he ever talked with Haley about the circumstances of the house burning; did not remember whether he told Haley anything of a row with the Smiths about paying for the house; and did not tell Mr. or Mrs. Haley about promising to pay the Smiths so much money for the place.

Mr. Haley testified that he was "first consulted by Mr. Ruby about the foreclosure of that deed of trust" a short time prior to the first publication of the notice to sell; that at or prior to that time he had no knowledge of the burning of the improvements or of any trouble between the Rubys and Smiths; that it would be difficult to state what the conversation was when Ruby came to him about the foreclosure; that "my recollection is that he brought the deed of trust securing the payment of the note and said that the note was past due and had been for some time; that he needed the money and that he wanted me to prepare the necessary publication, the nec-

essary papers as he put it, to sell under the deed of trust.

"Q. Was there at that time anything said to you about there being a claim of Mr. Smith against him or Mrs. Ruby growing out of the burning down of the house? A. No. He told me nothing about it and I knew nothing about it.

"Q. Did Mr. Ruby show you that promissory note, the note that was secured by the mortgage? A. Oh, yes.

"Q. And did you notice the payments endorsed on the back thereof? A. Yes, sir.

"Q. From those payments, did it appear that the note was delinquent at that time? A. Yes."

Ruby testified that a few minutes after the foreclosure sale, he asked Haley if he wanted to buy the land and Haley said he would. Asked how much time elapsed between his bid and his deed to his attorney Haley, Ruby answered: "Oh, thirty minutes."

Haley's testimony was that after the sale he prepared the trustee's deed in his office and Judge Motley came in and took the acknowledgment; that Ruby said he was disappointed; he needed money, and asked him if he was interested in buying; that they discussed the price; that Ruby did not have the money to pay the expenses of the sale and he told Ruby he would give $600 and pay the expenses. Haley had paid Ruby in full at the time of trial. He stated he had expended about $600 in improving the land prior to this suit, and that he had no knowledge at that time of any claim of the Smiths against Mr. Ruby or to the land.

Mrs. Haley had no information concerning the transactions between Mr. Ruby and the Smiths prior to the institution of the suit.

Ruby testified he had never shown Smiths' attorney's letters to Haley until the date of the trial; but it was stipulated that Haley and defendants' attorneys knew of the letters and had some of them in their files soon after process had been served in the suit.

The trial chancellor considered, absent evidence to the contrary, that plaintiffs were bound by the testimony of defendant Ruby, called by plaintiffs, and failed to establish that defendants Haley were not innocent purchasers for value.

Defendants Haleys' points are that even though a sale under a deed of trust be invalid because of fraud practiced by the mortgagee, yet if the property passes into the hands of a purchaser who takes without notice and for value, the sale cannot be set aside as to such purchaser (Adams v. Carpenter, 187 Mo. 613, 86 S.W. 445, 451; Curtis v. Moore, 162 Mo. 442, 63 S.W. 80, 82(1), [see Jackson v. Johnson, 248 Mo. loc. cit. 704, 154 S.W. loc. cit. 766]; Petring v. Kuhs, 350 Mo. 1197, 171 S.W.2d 635, 639 [9–11]); and that while a trustee in a deed of trust may not, directly or indirectly, purchase at his own sale, he may, after the sale, purchase from the original foreclosure purchaser, and if taking without notice and for value, will become a bona fide purchaser (Jodd v. Lee, 256 Mo. 536, 165 S.W. 991 [2]). The first cited cases are distinguishable from the instant case on the facts, and the trustee's repurchase in Jodd v. Lee was about four years after his sale under the deed of trust.

Without the consent of the cestuis, a sale by a trustee under a deed of himself, directly or indirectly, can be set aside even though the sale be made in good faith and for a fair consideration. The trustee sustains a fiduciary relationship to the debtor and the creditor. Reason and justice exact of him the most scrupulous fidelity in transferring one man's property to another. Northcutt v. Fine, Mo., 44 S.W.2d 125, 128 [1–3]; Goode v. Comfort, 39 Mo. 313, 325; Thornton v. Irwin, 43 Mo. 153, 162; 37 Am.Jur. 121, §§ 671 et seq.; 59 C.J.S. Mortgages § 577, p. 972.

■ And, where trust property is repurchased by a trustee after his foreclosure sale equity will look upon his repurchase with a suspicious eye and will jealously scrutinize the transaction. Mueller v. Becker, 263 Mo. 165, 172 S.W. 322, 325 [1].

■ No stranger to the deed of trust is here involved. Trustee Haley was the agent of Mrs. Haley under the facts of record. Haley knew a father was foreclosing on property of a daughter to whom he, Haley, sustained a fiduciary relation under the deed of trust being foreclosed. This record discloses no inquiry whatever respecting any rights of the daughter or her husband. Thirty minutes after the foreclosure Haley purchased the land for fifty per cent more than the foreclosure bid. An inference of an inadequate foreclosure sale price is a circumstance for consideration with other factors. Guels v. Mississippi Valley Trust Co., 329 Mo. 1154, 49 S.W.2d 60, 63 [4, 5].

The notice of the foreclosure sale stated: "Payment has been demanded for the principal and interest which has not been paid." The sale was advertised for Saturday, the 13th day of February, 1954, "between the hour of 10 o'clock in the afternoon of that date." Consult Stoffel v. Schroeder, 62 Mo. 147, 150. The description of the land to be sold was not free from defects. This notice was over trustee Haley's signature. According to all the evidence no demand for payment was ever made upon plaintiffs or either of them. Such a demand would have disclosed the situation between plaintiffs and defendants Ruby, including Ruby's promise to purchase and stand the loss occasioned by the fire. See Shumate v. Hoefner, 347 Mo. 391, 147 S.W.2d 640, 642 [4]. Trustee Haley's repurchase was with knowledge of any failure to discharge his fiduciary duties with even handed fairness.

Trustee Haley testified that following his delivery of the trustee's deed to Ruby they discussed his purchase of the land and he agreed to buy it; and that he thought he owed Ruby about $100 at the time plaintiffs sued. Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 302, 303, states: "Actions sometimes speak louder than words and acts are circumstances to be considered." The description of the land, covering more than one-half of a letter size sheet of single spaced typewriting, is pasted onto each of the two deeds. The blanks, except for this description, in the trustee's deed are in Haley's handwriting and the blanks in defendants Rubys' deed to the Haleys were typed by Mrs. Haley. Mrs. Haley did not know but that the description for the trustee's deed had been prepared before her husband filled in the blanks in that deed, stating he generally had such papers ready. The description in the trustee's deed is the carbon copy of the description in the deed from the Rubys to the Haleys. Only the $200 payment was made by the Haleys prior to the filing of this suit on March 6, 1954. The next payment was dated April 8, 1954.

■ We hold that a repurchase of trust property by a trustee thirty minutes after a creditor's foreclosure sale purchase exacts greater fidelity on his part as a fiduciary than a transaction involving strangers alone whenever this harsh method of depriving a debtor of his property is to be upheld. Ruby never took possession of the trust property under the foreclosure deed. The attending circumstances of the instant foreclosure fail to disclose such fairness in the discharge of fiduciary duties as ought to accompany an immediate repurchase of trust property by a trustee (Wooldridge v. Dittmeier, Mo., 190 S.W.2d 926, 930 [4, 5]), and stamp the trustee's repurchase as accomplishing by indirection ("as the fox runs") what the law prohibits him from doing directly ("as the bee flies") without the consent of the debtor. The issue does not necessarily involve fraud in fact. Mueller v. Becker, supra; Smith v. Isaac, 12 Mo. 106, 110; Stoffel v. Schroeder, 62 Mo. 147, 149; Abbot v. American Hard Rubber Co., 33 Barb., N.Y., 578, 593(2); Chorrmann v. Bachmann, 119 App. Div. 146 [1], 104 N.Y.S. 151 [1]; Ross v.

Demoss, 45 Ill. 447, 451. "Where there is fraud or unfair dealing surrounding the sale, then the only course followed in this state is to set the sale aside altogether." Drannek Realty Co. v. Nathan Frank, Inc., 346 Mo. 187, 139 S.W.2d 926, 928 [3]. Lunsford v. Davis, 300 Mo. 508, 254 S.W. 878, 885 [4].

The foregoing disposes of all points briefed.

The judgment and decree is reversed and the cause is remanded with directions to set aside the foreclosure sale, the trustee's deed to Ellis S. Ruby and the deed of defendants Ruby to defendants Haley, and to reinstate the deed of trust.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.