Smith v. Boyd.

FREELOVE M. SMITH, Executrix of the Will of HORACE S. SMITH, et al. v. BOYD, Appellant.

**Division One, April 16, 1901.**

1. **Deed of Trust:** RECORD NOTICE: REPRESENTATIONS OF PRIOR MORTGAGEE. One who buys land is charged by the statute with the status of title shown by the record, and can not, as to an innocent purchaser, be heard to impeach the notice by the record given, by a showing that the holder of the note under a prior deed of trust assured him that his deed of trust was the first lien.

2. ————: PRIORITY OF LIENS: KNOWLEDGE: FRAUD: INNOCENT PURCHASER. Where a new note and deed of trust are given in substitution of former ones, with a distinct understanding that they are to be cancelled and the record released, it is a fraud to permit the deed of trust to stand unreleased of record, and all persons who had actual knowledge of this agreement are estopped from asserting any title under such deed of trust. But such agreement for substitution is not in law the same as a payment of the note; so that, if said deed of trust is foreclosed after the maturity of the note, and one who had notice of the fraud buys the property at the trustee's sale, and afterwards conveys the land to an innocent purchaser without notice, who knew nothing of the fraud, but bought on the strength of the fact that the record showed that the deed of trust was a first lien, such innocent purchaser is not charged with the fraud, but takes the title, to the exclusion of him who purchased under the second deed of trust upon the assurance of the owner of the first mortgage note that the second deed of trust was the first lien. The loss in such case must fall on him who made the injury possible. The holder under the second deed of trust took no steps to have the first mortgage cancelled of record, and thereby made it possible for the holder of the first mortgage note to make an apparently regular and valid sale.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates*, Judge.

REVERSED.

*Karnes, New & Krauthoff* and *H. S. Conrad* for appellant.

(1) Registry of a deed is only evidence of notice to after-purchasers from the same grantor. 20 Am. and Eng. Ency. of Law, p. 528; Wade on Law of Notice, sec. 96; Jordens v. Schrumff, 77 Mo. 387; Merchant v. Woods, 27 Minn. 396; Palmer v. Bates, 22 Minn. 530; Bacon v. Van Schoonhoven, 19 Hun, 158, 87 N. Y. 441; Jones on Mortgages (5 Ed.), sec. 989; Scott v. McCullock, 13 Mo. 13; Durette v. Briggs, 47 Mo. 356; Tydings v. Pitcher, 82 Mo. 384; Digman v. Mc-Cullom, 47 Mo. 374. (2) A trustee's sale, to a bona fide purchaser for value, regularly conducted under the provisions of a deed of trust securing a note, which in fact has been fully paid, but not so shown of record, will not be set aside. Murphy v. Simpson, 42 Mo. App. 654; Kelly v. Staed, 136 Mo. 430; Mayes v. Robinson, 93 Mo. 122; Ebersole v. Rankin, 102 Mo. 504; Munsin v. Ensod, 94 Mo. 504; Drey v. Doyle, 99 Mo. 459; Fox v. Hall, 74 Mo. 315; Hickman v. Green, 123 Mo. 165; Jackson v. Stemberg, 14 Johns. 435; Atwater v. Seymour, Brayton, 209; Warner v. Blakeman, 36 Barb. 511; Merchant v. Woods, 27 Minn. 396, 7 N. W. 826; Palmer v. Bates, 22 Minn. 530; Redin v. Branhaw, 43 Minn. 283. (3) Where one by his negligence misleads others, his equity must yield to the better right of an innocent purchaser. Mann v. Jummel, 183 Ill. 523; Terrell v. Andrew County, 44 Mo. 309; St. Louis v. Gas Light Co., 70 Mo. 99; Freeman v. Moffitt, 135 Mo. 290; Bank v. Wade, 73 Mo. App. 588.

*George W. Day* for respondents.

(1) One who, prior to his purchase, has actual notice of conveyances affecting the title, which are outside of the chain under which he claims, can not, for protection, invoke the rule

that no constructive notice is imparted by their registry. Musick v. Barney, 49 Mo. 458; Wade on the Law of Notice (2 Ed.), sec. 12.   (2)   A purchaser of real estate who, prior to his purchase, requires an abstract of the title, and employs an attorney to examine it, will be charged with actual notice of all conveyances shown therein, though subsequent to the source of his title, on the principle that notice to the agent is notice to the principal.   Hayward v. Ins. Co., 52 Mo. 181; Meier v. Blume, 80 Mo. 179.   (3)   The purchaser of real estate at a foreclosure sale thereof under a deed of trust, who has knowledge of such facts as would start an inquiry by a prudent person, which inquiry would have resulted in knowledge of the payment of the debt secured by such deed of trust, can not claim protection as a bona fide purchaser for value. Vaughn v. Tracy, 22 Mo. 418; Speck v. Riggin, 40 Mo. 405; Majors v. Buckley, 51 Mo. 227; Fellows v. Wise, 55 Mo. 413; Muldrow v. Robison, 58 Mo. 331; Meier v. Blume, 80 Mo. 179; Drey v. Doyle, 99 Mo. 467; Bank v. Frame, 112 Mo. 502.   (4)   And one who employs an agent to purchase for him, at such a sale, will be charged with the knowledge of such agent concerning such payment, even though such knowledge was acquired by the agent long prior to such purchase, if the agent remembered such knowledge at the time.   Wade on the Law of Notice (2 Ed.), 687; Chouteau v. Allen, 70 Mo. 341.   (5)   Payment of the debt secured by a deed of trust, before sale, discharges it and re-vests the estate without any release, reconveyance or other act on the part of the mortgagee. It ceases to operate and has no force at law or in equity.   McNair v. Picotte, 33 Mo. 57; Pease v. Iron Co., 49 Mo. 124; Johnson v. Johnson, 81 Mo. 336; Hagerman v. Sutton, 91 Mo. 531; Kempf v Distilling Co., 41 Mo. App. 31; Murphy v. Simpson, 42 Mo. App. 658; Hand v. Distilling Co., 46 Mo. App. 674; Bartlett v. Eddy, 49 Mo. App. 32; Curtis v. Brown,

63 Mo. App. 431.   (6)   And payment of the debt will so operate even as to an innocent purchaser for value, unless the mortgagor, or those claiming under him, have done, or neglected to do, something which will operate to estop them from asserting title against such innocent purchaser.    McNair v. Picotte, 33 Mo. 57; Pease v. Iron Co., 49 Mo. 124; Redmond v. Packenham, 66 Ill. 434; Shippen v. Whittier, 117 Ill. 286; Jackson v. Anderson, 4 Wend. 477; Cameron v. Irwin, 5 Hill, 272; Warner v. Blakeman, 36 Barb. 501.    (7)    An owner of real estate is under no obligation, legal or moral, to have cancelled, of record, a deed of trust containing a power of sale in case of default of payment of the debt secured thereby, after said debt has been fully paid; and he, therefore, will not be estopped from asserting title against one who purchases it, relying on the record.   R. S. 1889, sec. 7094; McClure v. Logan, 59 Mo. 234; McNair v. Picotte, 33 Mo. 57; Pease v. Iron Co., 49 Mo. 124; Meley v. Collins, 41 Cal. 663; Chandler v. White, 84 Ill. 435.

MARSHALL, J.—This is a proceeding in equity to remove an alleged cloud upon the title to lot twenty-six in Knickerbocker Heights, an addition to Kansas City.   The plaintiff obtained a decree in the circuit court, and defendant appeals.

The record discloses the following state of facts:    On February 20, 1888, Henry L. Tyler owned said lot, and on that day he executed a deed of trust thereon to Charles H. Nearing, trustee, to secure his promissory note for twelve hundred and fifty dollars, payable five years after date to the order of Joseph H. Bauerlein, and the same was properly recorded on February 23, 1888.   Some time prior to May 21, 1889, Bauerlein transferred the note to George J. Monroe.   Because the note was over a year old, but not yet due, Monroe conceived the idea that he would have difficulty in negotiating it, so he pro-

cured Tyler to convey the property, by warranty deed, to Daniel Mensendick on May 21, 1889. This deed was also properly recorded. Thereupon, Monroe procured Mensendick to execute a deed of trust on the property to H. J. Zottman, as trustee, to secure a note for twelve hundred and fifty dollars, payable five years after date to the order of the Citizen's Loan & Trust Company. This deed of trust was properly recorded on May 24, 1889. Monroe was president of the Citizens Loan & Trust Company, and that company never owned the note or deed of trust made by Mensendick in May, 1889, but on the contrary Monroe was the real owner of it, and the deed from Tyler to Mensendick and the note and deed of trust made by Mensendick were made at Monroe's request and upon an agreement between him and Tyler that it was to be substituted for the Tyler note and deed of trust to Bauerlein, which Monroe then owned, and that the last named note and deed of trust were to be cancelled and released. Instead of doing so, however, they have never been released. Monroe transferred the Mensendick note, before maturity, for value and without notice, to Horace S. Smith, representing to him that it was a first mortgage, and the interest on the note not being paid as agreed, Smith elected to treat the debt as due, and requested the trustee, Zottman, to execute the trust, which he properly did, and Smith became the purchaser of the property at the trustee's sale on October 31, 1889, for $50, and on November 4, 1891, put the trustee's deed to him upon record. Smith allowed the matter to remain in this condition. Monroe retained possession of the note and deed of trust from Tyler to Bauerlein until after its maturity, and then on September 10, 1894, he transferred them to W. M. Castle, who through Monroe requested Nearing, the trustee, to execute the trust, which he did on April 5, 1895, and the defendant, Boyd, became the purchaser of the property for the sum of three hundred dollars, received a deed from the

trustee, and placed it on record on April 9, 1895. Monroe explained his failure to cancel and release the Tyler note and deed of trust to Bauerlein, as he agreed to do when he received in substitution therefor the Mensendick note and deed of trust, and his transfer of the Tyler note, after maturity, to Castle, by saying that he forgot his agreement or that it was done· by mistake. Boyd entered into negotiation with A. J. King to buy the property and procured an abstract of the title to the property from the King's Realty Company, and consulted · his attorney about the title.    He was advised of the deed from Tyler to Mensendick, of the Mensendick deed of trust, and of the sale under that deed of trust to Smith, but his attorney advised him that the Tyler deed of trust appeared by the records to be the first deed of trust, and that a sale under the Tyler deed of trust would cut out Smith's title acquired under the Mensendick deed of trust.    So, Boyd, on March 11, 1895, entered into a written contract with A. J. King, to take the property from King, either upon his warranty deed, or upon a trustee's deed under the Tyler deed of trust.    King bought the property at the trustee's sale under the Tyler deed of trust, and had the deed made to Boyd.    Boyd had no notice of Monroe's agreement as to the substitution of the Mensendick deed of trust for the Tyler deed of trust, nor of Monroe's breach of contract to cancel and release the Tyler deed of trust, nor of the fact that Monroe had wrongfully or by mistake transferred the Tyler deed of trust to Castle after the maturity of the note.    But King had been treasurer of the Citizens Loan & Trust Company, when Monroe was president, and he knew all about the agreement of substitution and to cancel and release aforesaid, and also knew that the Mensendick note and deed of trust had been issued to and received by Monroe in payment of the Tyler note and deed of trust, and it was while possessing such information that he purchased the property at the trustee's

sale under the Tyler deed of trust.   During all the times herein stated Smith was a resident of Illinois, and knew nothing of the foreclosure under the Tyler deed of trust.   Upon ascertaining those facts, Smith instituted this action to cancel the deed to Boyd.   The defendant answered and claimed that he was an innocent purchaser, for value and without notice, under the Tyler deed of trust, and that the plaintiff was estopped by his failure for over three years to take steps to have the Tyler deed of trust cancelled.   The plaintiff replied that Boyd had actual and constructive notice of the facts stated as to the Tyler note and deed of trust, and hence he was not an innocent purchaser without notice.   The circuit court entered a decree for the plaintiff, and defendant appealed.   Pending the appeal the plaintiff died, and the cause was revived in the name of his executrix and the devisees under his will.

I.

The Tyler deed of trust being properly recorded, Mensendick acquired only the equity of redemption remaining in Tyler, and under section 2419, Revised Statutes 1889, he purchased with notice of the Tyler deed of trust, and held subject to it.   So, when Mensendick made the deed of trust to the Citizens Loan & Trust Company (in reality to Monroe), that deed of trust became a valid deed of trust on the equity of redemption and subject to the prior lien of the Tyler deed of trust.   This was the status of the title disclosed by the records, and of which every person asserting title under the Mensendick deed of trust was charged with notice  by the statutes. When Smith took the Mensendick deed of trust from Monroe, he was charged with notice of this status of the title, and can not be heard to impeach that notice by averring that he relied upon the assurance of Monroe that the Mensendick deed of trust

was a first mortgage. So, also, when Smith purchased the property at the trustee's sale under the Mensendick deed of trust, he took it subject to the Tyler deed of trust, and Smith can not be heard to say that he did not know that the Tyler deed of trust appeared upon the records as a prior lien, for the records disclosed that fact and the statutes charge him with notice of it, as it lay directly in his chain of title. [1 Jones on Mort., sec. 514; 20 Am. and Eng. Ency. Law (1 Ed.), p. 594-599; Webb Rec. Tit., secs. 154-171.]

This determines this controversy so far as the records are concerned. But the plaintiff claims that the defendant's apparent record title is overthrown by matters in pais; that is, that Monroe owned the Tyler note and deed of trust; that he caused the conveyance of the equity of redemption by Tyler to Mensendick, and caused Mensendick to make the note and deed of trust to him, upon an agreement that it would be received in substitution for and payment of the Tyler note and deed of trust; that he, Monroe, held the Tyler note until after its maturity and only transferred it to Castle by mistake and oversight; that as Castle took the note after maturity he took it subject to any equities or defenses that could have been made to it if it had remained in Monroe's hands, and that as Monroe could not enforce it because it was paid, the defendant who purchased at the trustee's sale under the Tyler deed of trust for value and without notice, acquired no better title than Monroe or Castle would have gotten if either of them had been the purchaser, which would in law have been no title at all; and without this, that the defendant had actual notice of the facts relating to these transactions, at the time he purchased, in that he acted through A. J. King as his agent, and King knew all the facts and, therefore, the defendant must be held to know all his agent knew about the business his agent was authorized to transact for him.

The mere statement of the proposition draws with it the logical and legal conclusion that if Monroe or Castle or King had purchased at the trustee's sale under the deed of trust, they would have acquired no title, for they all knew that the note was paid and the power to sell under the deed of trust was extinguished, and, therefore, the sale was not only without authority but a fraud upon the plaintiff's rights under the Mensendick deed of trust; in short, that it was a fraud to permit the Tyler deed of trust to stand upon the public records as an apparent cloud on the title. [Pease v. Iron Co., 49 Mo. 124; Hagerman v. Sutton, 91 Mo. l. c. 531; Kellogg v. Schnaake, 56 Mo. 136; Jones on Mort., secs. 926 and 927a; 15 Am. and Eng. Ency. of Law (1 Ed.), p. 875, and cases cited in note.]

For neither Monroe, Castle or King would be bona fide purchasers under our statute, as they could not be said to have purchased "in the honest belief that his vendor had a right to sell," nor could they claim that their purchase was "without notice actual or constructive of any adverse rights, claims, interests or equities of others in and to the property sold." [Webb on Rec. Tit., sec. 202.]

The rule is thus stated in Webb on Record of Title, section 154: "The policy of the registry law is that the title and all that affects it should be disclosed by the public records, and upon the theory that it is shown, the rule obtains that a purchaser may rely upon the title as it appears of record, and that he will be protected against unrecorded conveyances, outstanding equities, secret liens and conditions of which he had no notice. This proposition embodies the general result of benefit and protection afforded by the recording acts. The rule that a perfect record title affords protection does not obtain where the purchaser is chargeable with actual notice. Nor does it obtain when the apparent title of record consists in part of a void deed, for such an instrument being a nullity can ac-

quire no effect by registration, and its record charges no one
with notice. The rule, however, protects a subsequent pur-
chaser without notice, buying from one who purchased with
notice, and whose deed is recorded. In such case the latter
purchaser is charged neither by the record, nor by any matter
of fact affecting his conscience and rendering his action in-
equitable."

Of course the record would not show the agreement to
substitute the Mensendick deed of trust for the Tyler deed of
trust, nor that it was received as payment therefor, nor can
the records alone show payment of a mortgage except by a
release of the mortgage. As between the parties to the mort-
gage, or those taking it with notice thereof, a payment releases
the mortgage in fact, although not on the records, and a sale
under a paid mortgage passes no title to anyone who takes with
notice. This is the extent of the rule in the cases cited by
plaintiff. The weight of authority does not support the plain-
tiff's contention that payment of the debt secured by the mort-
gage, *ipso facto* wipes out the mortgage so that a purchaser for
value and without notice at the foreclosure sale acquires no
title. The reason of the rule which protects bona fide purchas-
ers at such sales is that they have a right to rely upon the facts
disclosed by the record, and that the mortgagor, by permitting
the paid mortgage to remain unreleased on the public records,
holds out an apparent authority to sell under the mortgage,
and thus makes it possible to work a fraud upon bona fide pur-
chasers which he had it in his power to prevent by taking
effective and timely steps to have the mortgage released, and
as between two such innocent persons, the loss must fall on
him who made the injury to others possible.

As in this case: Smith had notice in law but not in fact
of the existence of the Tyler deed of trust standing unsatisfied
on the records. Instead of taking timely steps to have it can-

celled, he permitted it to so appear for over three years as a prior lien to his title on the public records, relying upon Monroe's assurance that the Mensendick deed of trust was a first mortgage.    Such reliance avails nothing against the notice which the records held out to him.    Thus, Smith's negligence of his own interests made it possible for Monroe to negotiate the Tyler note to Castle, after its maturity, and for Castle to cause Nearing, the trustee, to execute the trust, and in this way to cause Boyd, the defendant, to buy the property at the trustee's sale under the Tyler deed of trust.    Therefore, up to this point, Smith's negligence and laches afforded opportunity for the fraud upon Boyd perpetrated by Monroe, and Boyd must be considered as the innocent and injured party.

There is a material difference between Boyd's status here, as the bona fide purchaser at the trustee's sale, and what his status would have been if he had purchased the note and deed of trust from Castle, and had sued to foreclose the deed of trust.    In the latter case he would have failed, for he would hold the note as Castle's assignee after its maturity, and, therefore, the equities as against Castle would have been open to inquiry, and as Castle took it after maturity from Monroe, the equities as to Monroe would have been open to inquiry, and as to Monroe the note was paid and satisfied.    But the bona fide purchaser at a trustee's sale under a duly recorded deed of trust which appears unsatisfied on the public records, is not obliged to look any further.    He derives title through the records, not by owning the note secured by the deed.    At first blush this might appear to be a solecism, but a more critical analysis and the weight of adjudicated cases demonstrates that it is the true rule, and it is necessary, as well as logical and legal, because, otherwise no man would be safe in buying at a trustee's sale, lest perchance, it might fall out that the debt had been paid, and the value of such securities would thereby

be seriously impaired if not totally destroyed. This is the practical effect of the registry acts, and if it is not a desirable rule to live under, the remedy lies with the Legislature to abolish foreclosures by trustees and to require all mortgages and deeds of trust to be foreclosed by a proceeding in and a judgment of the courts, where the rights of all parties can be determined before the sale is had. It is not in the province of the courts to change the statute law.

It is not contended that Boyd had actual or personal notice of the infirmity in the Tyler deed of trust, but it is insisted that King acted as his agent in having that deed of trust foreclosed and in buying the property for him at that sale, and that King had knowledge and notice of all the facts with respect to that deed of trust, and hence King's knowledge was Boyd's knowledge.

It is a general rule of law that notice to an agent during the existence of the agency, and in reference to business coming within the scope of the agent's authority, is notice to the principal. [Hayward v. Ins. Co., 52 Mo. 181; Meier v. Blume, 80 Mo. 179; Donham v. Hahn, 127 Mo. 439; Bank v. Lovitt, 114 Mo. 519; Traber v. Hicks, 131 Mo. 180.] This rule has been qualified in some cases by confining the notice to the agent to notice received by him during, but not before or after, his agency. [Anderson v. Volmer, 83 Mo. 403; Richardson v. Palmer, 24 Mo. App. 480; Wheeler v. Stock Yards, etc., Co., 66 Mo. App. 260.] And this qualification has itself been relaxed so as to hold that if the agent received notice before his agency began, it must have been so recent that it will be presumed to have been in his mind at the time he acted for the principal. [Chouteau v. Allen, 70 Mo. 290.]

This general rule is also subject to another qualification, that is, if the agent is also personally interested in having the act done and it is measurably sure that the principal would not

consummate the act if he knew the facts, and the agent conceals the facts from the principal, the reason of the general rule ceases, and the knowledge of or notice to the agent is not the knowledge of or notice to the principal. [Bank v. Lovitt, 114 Mo. 519.] And the same is true if the agent himself is engaged in a fraudulent scheme or acting in collusion with a third person to defraud the principal. [Ibid; Ins. Co. v. Minch, 53 N. Y. 144.]

In this case King had made a written contract to sell the property to Boyd, and to give him a good title by warranty or trustee's deed. Boyd submitted the abstract of title to his attorney who advised him that the sale under the Tyler deed of trust would cut out Smith's title under the Mensendick deed of trust. So, such a sale was made at King's instance and he bought the property and had the deed made to Boyd. Under these circumstances it is plain that King was not Boyd's agent in the full sense of that term, for he was a party to the scheme, if not its promoter, to defraud Boyd. He concealed the fact that the Tyler deed of trust was paid by the transfer of the equity of redemption from Tyler to Mensendick, and the execution of the Mensendick deed of trust, because he knew that if he communicated that fact to Boyd or his attorney, Boyd would not take the property, and that he, King, could not give Boyd any kind of a title, either by a warranty deed or a trustee's deed, and hence King's interest was antagonistic to Boyd's; he was carrying out, with or without the assistance of Monroe and Castle, a fraud upon Boyd and also a fraud upon Smith. It would therefore be a mockery to hold that King was Boyd's agent, so as to affect Boyd with King's knowledge and notice. In reality King was the seller and Boyd the buyer of the property. King was acting in his own interest in having the property sold under the Tyler deed of trust and in pursuance to his written agreement with Boyd to give him a good

title by warranty or trustee's deed, and in taking the trustee's deed Boyd only carried out his contract with King to take such a deed to the property. King was acting for himself, carrying out his fraud, and not for Boyd when he bought in the property, and Boyd was acting for himself when he took the trustee's deed. Hence, Boyd is not charged with King's knowledge or notice, and must be treated as a bona fide purchaser for value and without notice. Boyd and Smith were both innocent purchasers. Boyd was guilty of no laches or negligence whatever. Smith was guilty of negligence and laches in allowing the Tyler deed of trust, of which he had notice by law but not in fact, to remain unsatisfied and apparently valid on the record for over three years after he bought, and it was this which made it possible for Monroe and King to perpetrate this fraud. Where one of two innocent persons must suffer, the loss must fall on the one whose conduct made the loss possible. This is axiomatic in equity.

For these reasons the judgment of the circuit court is reversed. All concur.