Jackson v. Johnson.

---

JOHN W. JACKSON, Appellant, v. HORRELL JOHNSON et al.

Division One, March 15, 1913.

1. **PLEADING: Petition: Sec. 650, R. S. 1899.** A petition under Sec. 650, R. S. 1899, is not rendered insufficient by a combination of proper allegations with statements of legal conclusions and demands for relief not appropriate to that act.

2. ———: ———: **Demurrer: Waiver.** All defects in a petition to which defendant does not demur before issue joined, except those of failure to state a cause of action and lack of jurisdiction, are waived.

3. **ADMINISTRATION:-Sale: Personal Service.** An order of the probate court for an administrator's sale to pay debts is void if there is no personal service upon resident heirs as required by Sec. 152, R. S. 1909.

4. ———: ———: **By Original Administrator: Report and Deed Made by Administrator De Bonis Non.** The deed of an administrator *de bonis non*, based on a sale by the original administrator, is void unless it refer to, and there was filed, a petition therefor by the purchaser or his successor, and unless the administrator who made the sale filed a report, in accordance with Sec. 168, R. S. 1899, which was approved by the court.

5. ———: **Guardian's Deed.** A guardian's deed is void where the land was not sold for any purpose authorized by law, and where no order of approval was entered by the probate court.

6. **MORTGAGE: Pledge.** A mortgage, though in form a conveyance of the legal estate, is in substance only a pledge of the land for the mortgage debt.

7. **NOTES: Indorsement: "For Collection."** Indorsement of a note "for collection" destroys its negotiability and limits to that purpose the authority of the transferee.

8. **TRUSTEE'S SALE: Note Paid Before Sale.** A sale under a deed of trust is void where the note secured was paid before the sale and was never owned by the person whom the sale deed recites as owner.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*John A. Hope* for appellant.

(1) No notice of the application to sell the real estate was personally served on the heirs of Lot Fletcher, each and all of whom were residents of New Madrid county. The statute requires personal service of such notice; it is a necessary prerequisite; and in the absence of such notice to the heirs, as in this case, the probate court is without authority or jurisdiction

to order a sale. Sec. 152, R. S. 1909; Valle v. Fleming, 19 Mo. 754; Young v. Downey, 145 Mo. 250.   (2) Another bad feature of the so-called administrator's sale is the fact that the 400 acres of land for which Lot Fletcher paid Beardslee $1,000 in 1891 and shown by the testimony to have been worth perhaps more than $5,000 in 1895, was purchased at the price of five dollars by Mitchell, one of the appraisers, who, only a few days thereafter, conveyed the land for a nominal consideration of one dollar to defendant Johnson's grantor, Spies.  The price of five dollars is so grossly and outrageously inadequate as alone to justify the inference of fraud and to require cancellation of the administrator's deed.   Derby v. Donahoe, 208 Mo. 699; Nelson v. Brown, 23 Mo. 21; Gordon v. Oneill, 96 Mo. 350; Curd v. Lackland, 49 Mo. 451; Davis v. McCann, 143 Mo. 177.   (3) With respect to the so-called curator's deed to Spies, respondent Johnson's grantor, the pretended order of sale does not set forth any finding by the court of any of the grounds which are named in the statute as authorizing sale of a minor's real estate.' R. S. 1909, secs. 430-436. There was no curator's report of sale, and no approval thereof by the probate court.  R. S. 1909, secs. 173, 177, 433. (4)  The timber taken by Spies paid the debt and satisfied the deed of trust, which thereby became *functus officio*, and the sheriff was without power as trustee to sell the property.  "There can be no valid sale after the debt secured by the mortgage has been paid."   2 Jones on Mortgages, secs. 1906, 1902; 1 Ib., secs. 943, 972; McNair v. Picotte, 33 Mo. 57; Pease v. Pilot K. I. Co., 49 Mo. 124; May v. Mortgage Co., 138 Mo. 452; Land Co. v. Zeitler, 182 Mo. 272.

*Russell, Deal & Joslyn* and *J. J. Russell* for respondent *Horrell Johnson*.

(1)  The record in this case does not disclose that there was personal service on the heirs of the de-

ceased who were residents of the county, if such they were at the time the application was made. Neither does it appear from the record of the proceedings of the probate court or in the files or returns appertaining to this estate that personal service was necessary, that is, that the heirs were residents of the county. In the absence of such a showing, regularity will be presumed. It will be presumed that the probate court did its duty and investigated the matter and ascertained that no personal service was necessary. Robins v. Boulware, 190 Mo. 33; Covington v. Chamblin, 156 Mo. 574; Desloge v. Tucker, 196 Mo. 587. (2) The report of sale was filed and approved at the February term, 1895, of the probate court which was in strict conformity to the law. R. S. 1899, sec. 166. (3) Appellant's counsel concedes that the sale under the deed of trust was in all respects regular and sufficient to pass the title if the debt secured thereby had not been paid. He contends strenuously, however, that the debt was paid because his witnesses claim to have heard Spies say something at some time or other to Harve Fletcher about paying this debt against the land and building a $400 house on the land in consideration of Spies getting the timber. We say that every act of Harve Fletcher as administrator of this estate completely refutes the statements made by these several witnesses. In the inventory which he filed describing this land he said it was subject to this deed of trust. In the last notice of sale of real estate which he published, and this was done long after Spies had bought the timber according to appellant's witnesses, he said it was bound by this deed of trust and when he sold it he did so subject to this deed of trust which was just a short time before he died. There is another strong circumstance which goes to show that this debt was not paid, namely: Claims to the amount of $2,241.84 had been allowed against the estate of Harve Fletcher, and the first annual settlement approved by the court

showed a balance of $82.77 in the hands of the administrator belonging to the estate. Cook, one of the creditors, was seeking to have the land sold and it was sold. If the fact is that the payment of the $700 Beardsley debt that was a lien on this land became a matter of "general notoriety" and "general knowledge" and "general reputation," it is, indeed, passing strange that some of these creditors, who had more at stake than anybody else, did not ascertain that fact and purchase the land when it was sold to Harve Fletcher, the administrator, subject to the deed of trust, and contest the question in the courts. The price paid, plus the $700, was not inadequate and therefore the authorities cited by appellant on inadequacy of consideration have no application. It is a commonplace of the law that to set aside so solemn an instrument as a deed for fraud requires proof of a character so high and stringent as to go beyond the mere preponderance of the testimony and remove all reasonable doubt. Weissenfels v. Cable, 208 Mo. 533.

BROWN, C.—One Lot Fletcher, who is the common source of title of the parties to this suit, was, up to the time of his death, a resident of New Madrid county. In December, 1891, he purchased from W. R. Beardsley, a resident of Morley, Scott county, Missouri, for the sum of one thousand dollars, the four hundred acres of land which is the subject of this suit, together with another tract of forty-eight acres. Of the purchase money he paid in cash three hundred dollars, and made two promissory notes to Beardsley, each for the sum of three hundred and fifty dollars, with interest at the rate of six per cent per annum, and secured their payment by a deed of trust on the land. Both were dated December 28, 1891, and one of them was due in twelve months and the other in twenty-four months. The land was timbered, and Mr. Fletcher cut and hauled out something like two barge loads of the

timber, which lay on the bank of the river at the time of his death. This amounted to somewhere in the neighborhood of 200,000 feet.

He died February 6, 1892, leaving a widow, Mrs. Martha Fletcher, who afterward married John Cobb, and the following named children as his only heirs: Ruth Fletcher, born in 1881; Ida Fletcher, born in 1882; Pearl Fletcher, born in 1883; Mattie Fletcher, born in 1884; Hattie Fletcher, born in 1886, and William Leslie Fletcher, born in 1890. Before this suit was instituted Ruth married one Jean Flowers, Ida married John Keene, Mattie married James Keene, Pearl married Osner Cobb, and died in 1900, leaving no surviving child, Hattie married Ed Ward and Leslie was single at the time of the trial. Upon the death of Lot Fletcher his brother, Harvey Fletcher, was appointed by the probate court for New Madrid county the administrator of his estate, which he thereupon took into his possession and proceeded to administer. The record shows that in addition to the land involved in this suit the administrator inventoried 204½ acres of other lands in New Madrid county. He sold the corn crop of 1891 for $1,268.35, and sold ash and cottonwood timber which had been cut by intestate to the amount of $1648.21, and had other personal property appraised at $1,030.

The administrator also sold to one Jesse W. Spies, a lumber and mill operator in Cairo, Illinois, the standing timber on the 448 acres. The consideration of this sale is one of the matters in dispute.

The records of the New Madrid Probate Court contain the following entry as of the February term, 1894:

"A. O. Cook, one of the creditors of said estate, presents a petition for the sale of the real estate of said Lot Fletcher to pay the debts of said Fletcher, and the court finding that the personal property heretofore sold is entirely insufficient for the payment of

the debts allowed against said estate, it is now ordered that the said administrator proceed at once to sell the real estate as by law directed." This is the only mention in the record of Mr. Cook or his petition. At the same term an order of publication issued, reciting that it was made upon the petition of Harvey Fletcher, administrator of the estate of Lot Fletcher, deceased, for an order of sale of certain real estate described in it, including that here in suit, and was returned with proof of publication on February 17th and 24th and March 3rd and 10th and 17th. At the May term, 1894, an order of sale was made upon this notice. The record contains no direction for any other notice than this, nor do the files contain any such notice. The heirs of Lot Fletcher whose interests are involved in this suit testified that no personal notice was given.

On February 11, 1895, the probate court ordered L. Newbauer, public administrator, to take charge of the estate of Lot Fletcher as administrator *de bonis non*. On March 15, Newbauer presented "his settlement as administrator of the estate of Harvey Fletcher, deceased, former administrator of the estate of said Lot Fletcher, deceased, which is examined and approved." On March 16th is the following entry: "In the matter of Estate of Lot Fletcher, deceased; L. Newbauer, administrator *de bonis non*. Report of sale of real estate:

"Now comes L. Newbauer, administrator *de bonis non* of the estate of Lot Fletcher, deceased, and files his report of sale of the real estate made to [sic] Harvey Fletcher, former administrator of the estate of said Lot Fletcher, deceased, said Harvey Flitcher having died after making sale of the real estate described in order by this court, all of which is approved and confirmed, and the said administrator *de bonis non* is ordered to execute, acknowledge and deliver to W. W. Pinnell a deed in due form of law, conveying to the said

W. W. Pinnell all the right, title and interest which the deceased had in same at the time of his death in the following described real estate: The southwest quarter of section 16 in township 22 north, range 15 east, containing 160 acres; and also to execute, acknowledge and deliver to C. L. Mitchell a deed in due form of law, conveying to the said C. L. Mitchell all the right, title and interest which the deceased had in the same at the time of his death in the following described real estate, to-wit: The east half of southwest quarter and east half of section 10 in township 22, range 15 east, containing 400 acres; it having been satisfactorily proven to the court that said sale was legally and fairly conducted pursuant to the order of the court, and in accordance with the statute.'' The report of sale referred to, after describing the land and making some formal statements not important here, states, in substance, that Harvey Fletcher, as administrator, sold the land on November 13, 1894, after having had the same appraised by C. L. Mitchell, W. W. Pinnell and Charles Green, three disinterested householders, and given four week's notice by advertising in a newspaper published in the county, and that at the sale William W. Pinnell purchased the one hundred and sixty acres not included in this suit for the sum of fifty dollars and C. L. Mitchell was the highest bidder for the four hundred acres included in this suit for the sum of five dollars, subject to the lien of a deed of trust for seven hundred dollars, to William Beardsley, and that the puchasers had complied with the terms of their purchases respectively. This report was verified by the affidavit of Newbauer, stating that he was not interested in the property sold except as stated in said report. The report also stated that Harvey Flitcher died on the first day of November, 1894. The order of sale recited in this report states that notice of the application had been published in the weekly record, etc., but mentions no personal notice to the heirs.

On April 9, 1895, the following entry was made in the records of the New Mardid Probate Court in vacation. "It appearing to the court that Ida B. Fletcher, Ivory P. Fletcher, Mattie L. Fletcher, Hattie M. Fletcher and William L. Fletcher, minor heirs of Lot Fletcher, deceased, have no curator of their respective estates derived from their father, it is ordered that Louis Newbauer be and is hereby appointed curator, who is ordered to take charge of said minors at once." At the May term there is an entry stating, in substance, that the curator filed an inventory showing that he had no personal estate in his hands belonging to the minors, and asking for a sale of their real estate, and it was thereupon "ordered by the court that said curator be and is hereby authorized and empowered to sell the real estate at either public or private sale, first having the same appraised according to law, for not less than three-fourths of the appraised value thereof, for cash, and report his proceedings therein to the court at the next term thereof." At the following term (the children having no further use for a curator), Newbauer filed his final settlement and was discharged. In this settlement he charges himself with the "amt. rec'd for parents' eq. of redemption in land conveyed by deed of trust, $5," and takes credit for probate fees to amount of $5, leaving "balance due on estate, nothing."

In connection with this last "sale" the appraisement values the 400 acres sold at five dollars, "subject to a deed of trust for four hundred dolars." The paper on file as a report of this sale is neither sworn to nor signed, and does not state either the price at which the land was sold or the name of the purchaser. There is no record of the approval of a report of sale by the court.

On the 12th day of August, 1895, Newbauer, as curator of the estate of Ruth Fletcher, Ida B. Fletcher, Ivory P. Fletcher, Mattie Fletcher, Hattie Fletcher

and William Fletcher, minors, made a deed in the usual
form of a guardian's deed reciting a private sale and
purporting to convey the interest of his wards in the
four hundred acres described, to J. W. Spies.

Mr. Spies states in his testimony given for defend-
ants that, having paid the first of the two Beardsley
notes out of moneys going to the Lot Fletcher estate
as payment for the standing timber he purchased from
it, he "took up" or "bought" the second note to pro-
tect himself and this timber and keep anyone else from
foreclosing. He thought he could hold it until he got
his timber off. He did not consider it worth anything
with the timber off, "with all the tops and everything
we left on it." The history of both these notes is
more fully developed by the testimony of Mr. J. J.
Hunter, another witness for defendants, who was cash-
ier of the Scott County Bank, at Morley, Mr. Beard-
sley's home town. Being shown the second note he
said that his bank bought it from Mr. Beardsley be-
fore its maturity, and that when it was due he sent it
to the People's Bank of New Madrid (of which Mr.
Lee Hunter was cashier) and it was paid. The Scott
County Bank got the money. He also stated that the
other note was held by his bank, and was collected
directly through the City National Bank at Cairo. The
second note, which was in court, contained four in-
dorsements, stated in the record as follows: "For
value received, I assign the within note to Scott Coun-
ty Bank. William R. Beardsless. And further in-
dorsed by Lee Hunter, cashier, or order, for collection.
Scott County Bank, Morley, Missouri. August 16,
1894, pay the City National Bank of Cairo or order
for value received without recourse. People's Bank,
Lee Hunter, Cashier. Without recourse, J. W. Spies."
Mr. Spies, after having failed to induce Mr. Mott, the
trustee in the Beardsley deed of trust, to exercise his
power, procured the sale of the 448 acres of land by

248 Mo.—44

the sheriff of New Madrid county, the substitute provided by the terms of the instrument, and became the purchaser of the price of $17.50. The trustee's deed, made to him by the sheriff on June 24, 1895, recited a public sale as of that day, upon default in the payment of both notes. Spies and wife, on August 5, 1899, conveyed the four hundred acre tract to the defendant Johnson and one Amos L. Phillips for the stated consideration of $1100. On November 2, 1901, Phillips and wife by warranty deed, reciting a consideration of one dollar, conveyed the undivided one-half of the same land to Johnson.

C. L. Mitchell, by quitclaim deed dated April 3, 1895, for the recited consideration of one dollar, conveyed his interest in the land purchased by him at the administrator's sale, to Spies. Further facts will be stated in the opinion as reference to them may become necessary.

I. It is evident that in attempting to sell this land through the instrumentality of the probate court no consideration was had for the rights or interests either of the creditors of the estate of Lot Fletcher or of his infant heirs. The sole and only possible object of either proceeding was to take from these children such interest as they had, and to transfer it to some one who stood in better position than they to control the instrumentalities to which the law confided their care and protection. This is illustrated by the pretense to sell the land at guardian's sale. Harvey Fletcher, who was appointed by the court the curator of the estate of these minors in 1893, died, and on April 9, 1895, Newbauer, the public administrator, was appointed curator of the five younger children in his stead. On May 20, 1895, apparently without having given bond, he filed an inventory and petition for the sale of the real estate, stating that he had no personal estate in his hands belonging to them, and it was thereupon or-

dered by the court that he be authorized to sell the real estate at either public or private sale and report his proceedings at the next term. At the August term of the same year and on August 20th he filed his "first and final settlement" as curator of the *six* heirs in which the only charge against himself was $5, the proceeds of this real estate, and the only credit, probate fees to the amount of $5, leaving "balance on estate, nothing." This settlement was approved and he was thereby discharged. In the meantime his only act as such guardian had been to have the land appraised at $5 and to sell it, at private sale, to Mr. Spies for the same amount.

This farce has its counterpart in the sale of the same land for $5 by the administrator to one of the appraisers. Such proceedings, however, having for their object the perversion of the processes of law to improper purposes, have sometimes been perpetrated with such skill and attention to prescribed formalities as to afford to purchasers who have not participated in or had knowledge, express or by legal implication, of their wrongful character, the foundation upon which to establish unassailable titles; and the inquiry arises as to whether or not such a result has been secured in this case. This suit was instituted after the passage of the Act of March 15, 1897, entitled "An act to enlarge the jurisdiction of courts of record in suits to determine and quiet the title to real estate." [Laws 1897, p. 74; R. S. 1899, sec. 650.] It provides as follows:

"Section 1. Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest

of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."

Section five declares the act to be remedial in its character, and that it takes the place of statutes which had failed in their object; so that it is only obeying the express intention of the Legislature to give it such interpretation as will aid in the accomplishment of the purposes of its enactment. It also provides that the proceedings in such cases shall conform in all respects to the provisions of the existing civil code.

The petition avers title in fee in the plaintiff, and that the defendant Johnson claims title under certain proceedings which are distinctly alleged to be void at law, and if not, to be voidable in equity. It asks the court "to adjudge and decree plaintiff and said Hattie and William Fletcher to have title in fee to said land, and to further adjudge and decree that defendant has no title or interest whatever in said land or any part thereof, except the dower interest of Martha A. Fletcher, widow as aforesaid." These allegations and the prayer for relief quoted, seem to include everything required by the Act of 1897, and they lose nothing, in this respect, by combination with statements of legal conclusions and demands for relief not appropriate to that act, which is, by its terms, applicable to legal and equitable titles. The Code provides (R. S. 1909, sec. 1800) that the defendant may demur for the causes, among others, that there is a defect of parties plaintiff or defendant, or that several causes of action have been improperly united. It also provides that "if no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same." This court has accordingly held, with great uniformity, that, with the exception which it makes of the two cardinal defects of failure to state a cause of action and lack of jurisdiction in the court,

all defects in the petition are waived whenever, in the evolution of a lawsuit, the case has advanced to the stage of issue joined upon the facts. [White v. Railroad, 202 Mo. 539; Hendricks v. Calloway, 211 Mo. 536; Stone v. Perkins, 217 Mo. 586.] This case having, without objection, reached and passed that restful stage to final judgment, it only remains to determine whether any cause of action stated in the petition against any defendant, has been sustained.

II.   It being admitted that Lot Fletcher is the common source of title and that his title descended to his heirs and remains in them, unless it has been divested by certain proceedings which occurred after his death, the validity and effect of those proceedings constitute the real subject of injury upon this appeal.

It is first asserted that the land was sold and conveyed for the payment of the debts which Fletcher owed at the time of his death. If this was lawfully done the title of the heirs, and consequently that of the plaintiff who claims under three of them, was thereby divested.

The statute under which the proceeding relied on was taken (R. S. 1909, sec. 152) provides that whenever a petition for the sale of real estate for the payment of the debts of a decedent shall be filed in the probate court, it shall order that all persons interested in the estate be notified thereof, and that "unless the contrary be shown on the first day of the next term of the court, an order will be made for the sale of the whole or so much of such real estate as will pay the debts of the deceased." The court made this order, and directed that the notice be served by the publication of a copy of the order in a newspaper. The statute went further, and provided that it should not only be so published, but "that in all cases where such administration is had, there shall be personal service of the notice required by this section on such heirs or

devisees," and that upon proof of publication *and* service of notice as above provided, the court shall hear the testimony and may make an order for the sale of the real estate. No discrimination is made between the two classes of notice. The expression of one is as mandatory as the expression of the other, and the service of one is made as necessary to the jurisdiction as service of the other. [Thompson v. Pinnell, 237 Mo. 545.] Upon the return of the order the court actually made the inquiry required by the statute and recorded its finding that the notice had been published in a newspaper according to the terms of its order, but made no finding or statement that any other notice had been given. There is no denial of the fact that at the date of the death of the father and the appointment of the administrator his six children were "residents of the county" where the administration was had, and that they continued to be so during all the time to which this inquiry relates. The law required this residence to be a matter of record in the court where these proceedings were had. [R. S. 1909, sec. 22.] The same court had also taken, in 1903, jurisdiction of their estate, and held it during all the time these various attempts were being made to strip them of it. This required a further record of their residence (Id., sec. 405), so that the court was, at all times, judicially informed of that fact. Its finding as to the manner of service is not aided or supplemented by any process, return or other paper in its files, and no attempt is made to dispute the oral evidence that no such service was had. Reliance is placed alone on a presumption that the court would not have acted without the "proof" of notice which the statute expressly requires as a condition precedent to its action. In other words, it is contended that, although the court had no jurisdiction to proceed to the trial of the issue before it without notice to the parties to be bound by it, yet it might obtain such jurisdiction by proceeding

to the trial of the merits of the controversy without having given the notice. It is unnecessary to determine how far this presumption of jurisdiction of the person extends in proceedings of this character where it is founded solely upon the silence of a court which can only speak through its records. Such is not the case here. The court has tried the statutory issue of notice, and has entered that fact and its finding upon that issue in its records, in which all mention of personal service is omitted. We cannot, for the purpose of paving the way for the disregard, by the courts, of safeguards provided by the statute, extend this finding to jurisdictional matters to which it does not refer. The order of sale was, for reasons we have stated, void.

III. The statute in force at the time the proceeding for the sale of this land was had, required that the administrator, at the next term of the court after the sale, make a full report of his proceedings, to be "verified by affidavit stating that he did not directly or indirectly purchase such real estate or any part thereof, or any interest therein, and that he is not interested in the property sold, except as stated in said report" (R. S. 1899, sec. 167), and that (Id., sec. 168) "if such report and proceedings of the executor or administrator be not approved by the court his proceedings shall be void." The Legislature has not left it to the courts to determine the effect of a neglect of these proceedings. If they are not present, the *report* and *its approval*, we have only to obey the legislative mandate, and pronounce the proceedings void. It is true that section 171 provides that if "any executor or administrator shall remove from the State, resign or die, or his letters be revoked after the sale of any real estate, and before executing any deed therefor, the purchaser, his heirs, assigns or grantees, may petition the court, stating the facts; and if he satisfy the court

that the purchase money has been paid, the court shall order the executor or administrator then acting, or, if after final settlement, the sheriff of said county, to execute and acknowledge to the purchaser, his heirs, assigns or grantees a deed, referring to the petition and order of the court with such other recitals as provided by section 173, which deed shall be executed accordingly, and shall have the effect to all intents and purposes as if made by the executor or administrator who made the sale,'' but there is nothing in this section which authorizes the executor or administrator *de bonis non,* or the sheriff, to do anything more than to execute a deed. He is only authorized to do this upon petition of the purchaser or his representative in title, which must be referred to in the deed. These requisites are entirely lacking, and for this reason alone, the deed would be void on its face. The report can only be made by the executor or administrator who made the sale, and whose mind is the only available repository of the facts which must be stated in it on oath, and it must be recited by the executor or administrator *de bonis non,* or sheriff, as the case may be, in the deed authorized by the section quoted.

IV. We have carefully examined the brief of respondent, and fail to find in it any claim based upon the guardian's deed in the case, or excuse for any one connected with the perpetration of that transaction. The record shows that the land was not sold for any purpose authorized by law; that the curator was appointed. solely for the purpose of divesting the Fletcher children of whatever title or interest they had in the land in suit; that to do this was his only act as curator; that having done it he appropriated the entire estate of his wards as an insignificant contribution to the cost, and retired without having had the effrontery to ask the court to approve the ''sale,'' and that no order of approval was entered. This proceed-

ing has no tendency to strengthen the respondent's title.

V.  While the farce described in the last paragraph was still being acted in the New Madrid Probate Court, Mr. Spies was not otherwise idle. Claiming to be the owner of the two notes secured by the deed of trust from Lot Fletcher and wife to Louis W. Mott, trustee for Beardsley, he requested the trustee to foreclose by sale under the power contained in the deed. Mr. Mott refused. The sheriff then, as the substitute named in the deed, sold the land, at the request of Mr. Spies, who became the purchaser. The trustee's deed executed by the sheriff in pursuance of this sale contains all the recitals called for by the terms of the deed of trust under which it was made, including the recitals that Mr. Spies had become the holder and legal owner of both the notes, and that default had been made in the payment of both. The question whether this sale and conveyance had the effect of transferring the legal title to the purchaser is, perhaps, the most difficult one in this case.

The issues both of law and fact were tried together by the court without the intervention of a jury, and its only finding is a general one for the defendants. It was asserted by the plaintiff in the trial that both the notes secured by the Beardsley deed of trust had been paid before the trustee's sale to which we have just referred, but there is nothing in the record which directly or necessarily indicates that the court considered that question; while, in the view we have taken, it has assumed a position of first importance. Under these circumstances we are not called upon, even were this such an action as is described in section 1968, Revised Statutes 1909, as one for the recovery of money only, or of specific real or personal property, to presume that the court found upon that particular issue against the appellant, unless it had be-

fore it substantial evidence upon which it might reasonably so find. We do not decide that this is such a case or such a question as is required by the code to be tried by a jury. We do not consider it necessary to make any inquiry upon that point, but will assume, for the purposes of this case that the rule applicable is as we have stated it.

There is nothing better settled in this State than the reasonable doctrine that a mortgage, though in form a conveyance of the legal estate, is in substance only a pledge of the land for the mortgage debt. In upholding this doctrine (Benton Land Company v. Zeitler, 182 Mo. 251) this court quoted with approval (Id., 273) from Perry on Trusts [5 Ed.], vol. 2, sec. 602i, as follows: "Performance of the conditions of the deed on the part of the grantor, or tender of performance before the sale, will defeat the power of sale in a mortgage or deed of trust. Such performance or tender extinguishes the power; and a sale after wards under the power, even to an innocent purchasei will be void." This doctrine only enforces to the letter the terms of the defeasance of the most of these instruments, which provide, like the one we are now considering, that upon the performance of the condition the deed shall be void. Chancellor Kent (4 Kent's Com., 194, note) recognizing the state of the law in this country on the subject said: "I am persuaded that most of the courts of law in this country would not now tolerate a claim of title under a mortgage admitted or shown to have been fully and fairly satisfied by the payment of the debt." The plaintiff claimed that the notes were paid by Spies in pursuance of a contract with Harvey Fletcher, the administrator of Lot Fletscher's estate, by which the latter had sold him some timber belonging to the estate, and the payment of the notes was assumed as a part of the consideration. The terms of this contract therefore became an important issue in the trial. The theory of plain-

tiff, as stated above, was strongly supported by his evidence. Mr. Spies, against plaintiff's objection, made on the ground that the other party to the transaction was dead, admitted that he paid off the note first due in this transaction, but denied that the contract required him to pay the other one. As to this, he testified indiscriminately that he *"took it up,"* and *"paid it,"* and *"bought it,"* as those different forms of expression were respectively suggested to him by the defendants' attorney who examined him in chief. It makes no difference how far he may have been competent or incompetent to speak to this issue if the transaction as defendant has proved it speaks for itself. Its voice must control us in this inquiry.

It was proved by the defendant, and is necessarily admitted as a part of his case that both those notes were transferred before maturity by Beardsley, who lived at Morley, Scott county, Missouri, to the Scott County Bank of that city. The one first due .was collected by that bank through the City National Bank of Cairo, being paid by Mr. Spies. The other note, which is the bone of contention in this case, remained the property of the Scott County Bank. There is nrch-ing suggestive of any process by which it could be deprived of that ownership without its consent or knowledge. The note itself, bearing its written indorsement, was present in court at the trial and, in connection with the testimony of Mr. J. J. Hunter, the cashier of its owner, who was introduced by defendant for that purpose, tells its subsequent history. It was indorsed by the Scott County Bank to Lee Hunter, cashier, or order, *for collection.* Lee Hunter was cashier of. the People's Bank of New Madrid, where the maker had resided in his lifetime. This indorsement, as copied in the record, reads *by* Lee Hunter instead of *pay* Lee Hunter; but it is evidently a mistake which, like the ones which immediately follow it, in which "Beardsley" is written "Beardsless," and the many

others with which this record abounds, results from the abandonment to stenographers and printers of the duty which lawyers assume by their retainer, to present their cases properly to the courts. In this instance, however, it only complicates the duty of the court, for were every word of this indorsement eliminated excepting only the words "for collection" and the signature of the bank, it would be equally destructive of the negotiability of the note; and would have no other effect than to constitute the indorsee and those taking it through the indorsement until the restriction should be removed by the owner, its agents for the purpose stated in the indorsement. On this point Mr. Justice MILLER, in Sweeny v. Easter, 1 Wall. 166, 173, said: "The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the indorsement without them, and warned the party that, contrary to the purpose of a general or blank indorsement, this was not intended to transfer the ownership;" and on page 174 he said: "The indorsement in the present case was not intended to give currency or circulation to the paper. Its effect was just the reverse. It prevented the further circulation of the paper, and its effect was limited to an authority to collect it." This same doctrine has been frequently asserted in this State. [Northwestern National Bank v. Bank of Commerce, 107 Mo. 402; Mechanics Bank v. Valley Packing Co., 70 Mo. 643, 4 Mo. App. 200.]

Mr. Justice STORY, in Kelly v. Jackson, 6 Pet. 632, has in his own lucid way given us a definition of the term "prima-facie evidence" when applied to conditions like these. He said: "In a legal sense, then, such prima-facie evidence, in the absence of all controlling evidence, or discrediting circumstances, becomes conclusive of the fact; that is, it should operate upon the minds of the jury as decisive to found their verdict as to the fact." In this case the statement of

the *quasi* trustee in his deed, that Mr. Spies had, be-
fore the 24th day of June, 1895, become the holder and
legal owner of the note in question, and that it re-
mained unpaid, is the prima-facie evidence relied on
to establish those facts.   It includes, as a grammat-
ically inseparable part, the assertion that he was the
holder and legal owner of both notes, and that both
were unpaid, which is confessedly untrue.   This is a
"discrediting circumstance," because it shows that the
sheriff recklessly made the statement in disregard of
the rights of the debtor whom it was his duty to pro-
tect in all reasonable ways, or, that having investi-
gated, he had been deceived.   We will, however, dismiss
this question with the remark that the trustee whose
mere statement is  to constitute the  evidence upon
which one of his beneficiaries is to be deprived of his
property, should make some effort to fortify himself
with the truth.   The evidence being, by the terms of
the statute as well as of the deed, only prima-facie in
its force, we will pass to the "controlling evidence" of
its truth or falsity.

Recognizing that evidence to sustain the recital of
the trustee as to the ownership of the note and the
existing default in its payment, was called for, the de-
fendant, as we have already said, introduced the note
and indorsements showing that the Scott County Bank
was its owner, and had sent it out for collection with
its negotiability destroyed.   He then introduced the
cashier of that bank, who testified that the note was
paid and the money returned to the bank through the
correspondent to whom it had been indorsed and sent
for that purpose.

This was the case with which the defendant went
to the court upon the issue of the payment of the note
before the sale.   There was no disputed fact necessary
to be considered.   The issue was one of law, and our
conclusion is, that notwithstanding the recitals of the
trustee's deed, Mr. Spies was never the owner of the

note in question, and that it had been paid to the true owner before the sale, and that for this reason no title was conveyed by the deed made by the trustee in pursuance of such sale, and that the defendant Johnson, even were he an innocent purchaser, without notice of the infirmity, would take nothing by reason of it. He does not, however, stand in the position of an innocent purchaser. The record of his own title papers was before him. He was himself an abstractor of titles, and would naturally feel interested in knowing why the land that he and his partner were paying a thou-- sand dollars for had been sold to their grantor four years before in foreclosure of a deed of trust which constituted a first lien upon it, for seventeen dollars and fifty cents. Looking at this deed he would have found the recital that the trustee, whose duty it was to make the sale upon the occurrence of a default, if requested by the *cestui que trust,* and to apply the proceeds on the debt (Land Co. v. Zeitler, 182 Mo. 251, 272), had refused such a request by his grantor who, two months after the trustee's sale, had accepted a guardian's deed for the same land, reciting that the deed of trust was still in force for four hundred dollars. These circumstances would seem to be sufficient to put a sane man upon inquiry as to their true meaning.

It follows from what we have already said, that notwithstanding the several deeds and proceedings under which the defendant Johnson claims, the legal title to the lands in controversy remained in the heirs of Lot Fletcher; that by the deed of October 15, 1903, the plaintiff acquired all the title and interest of Ruth L. Flowers, Mattie L. Keene and Ida B. Keene as such heirs, and as heirs of their deceased sister, Ivy Pearl Cobb, and is entitled to maintain this suit to have the title and interest of the respective parties ascertained, declared and adjudged by the court. The judgment of the New Madrid Circuit Court is accordingly reversed,

and the cause remanded to that court for further proceedings in accordance with this opinion, with permission to the plaintiff to amend his petition and to make new parties thereto if he shall be so advised.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—The respondent, on motion for rehearing has cited the following cases decided by this court, to which it had not previously directed our attention: Curtis v. Moore, 162 Mo. 442; Smith v. Boyd, 162 Mo. 146; and Adams v. Carpenter, 187 Mo. 613. Upon the authority of these cases it is insisted that we were in error in our approval of the doctrine stated by this court in the later case of Benton Land Company v. Zeitler, 182 Mo. 251, in a quotation from Perry on Trusts as follows: "Performance of the conditions of the deed on the part of the grantor, or tender of performance before the sale, will defeat the power of sale in a mortgage or deed of trust. Such performance or tender extinguishes the power; and a sale afterwards under the power, even to an innocent purchaser, will be void." Although we held in this case that no innocent purchaser had intervened, yet the fact that in Smith v. Boyd, supra, this court, speaking through MARSHALL, J., held that a sale and conveyance under a deed of trust which had been paid but not satisfied of record was sufficient to give a good title to one not charged with notice of such payment, makes it proper that this case should not be finally disposed of without reference to that authority. It was placed on the ground that the policy of the registry law is that the title and all that affects it, should be disclosed by the public records and that a purchaser

will be protected against unrecorded conveyances, outstanding equities, secret liens and conditions of which he had no notice. [Id., p. 154.]

While the Legislature evidently had this theory before it in the enactment of the recording laws, and expressly provided in case of deeds that "no such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record" (R. S. 1909, sec. 2811), it declined to apply it to the satisfaction upon the records of mortgages and deeds of trust. On the other hand, as was said by this court in McNair v. Picotte, 33 Mo. 57, 71, it provided that "the failure to enter satisfaction on the margin of the record of the mortgages might subject the mortgagees to penalties but has no effect to keep the mortgages in existence; it was only a failure to supply convenient evidence of a fact accomplished." The learned judge who delivered the opinion of the court in Smith v. Boyd, supra, did not notice the McNair case. Although he cited Pease. v. Iron Co., 49 Mo. 124, in which the doctrine contrary to his opinion was directly and emphatically stated and Hagerman v. Sutton, 91 Mo. l. c. 531, in which we said, "But for the note the mortgage never would have existed; it owes its birth and being to the note and ceases to exist when the latter is discharged," he does not seem to have noticed their bearing upon the case before him. Since the decisions in Smith v. Boyd the court seems to have been as emphatic in its adherence to the old doctrine as it had been before, as appears in Land Company v. Zeitler, 182 Mo. 251, cited in the opinion in this case, as well as from the later case of Adams v. Carpenter, 187 Mo. 613, in which we said through Burgess, J., who delivered the opinion of the court (p. 636), that if the note secured had been paid before the trustees' sale, the sale would have been void. We see no reason to depart from what we consider the just

and salutary doctrine of these decisions, and so far as the contrary doctrine is stated in Smith v. Boyd, supra, and tacitly recognized in Curtis v. Moore, supra, those cases are disapproved. We see no reason why our former judgment should be modified as asked in the motion for a rehearing. The motion is overruled.